DANIEL J. SCHACHT, #259717
dschacht@donahue.com
ANDREW S. MACKAY, #197074
amackay@donahue.com
PADMINI CHERUVU, #301292
pcheruvu@donahue.com
STEPHANIE L. GONZALEZ, #352905
sgonzalez@donahue.com
MEGAN C. CRONIN, #363603
mcronin@donahue.com
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone:   (510) 451-3300
Facsimile:    (510) 451-1527

Attorneys for Plaintiff WIXEN MUSIC
PUBLISHING, INC., a California
corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WIXEN MUSIC PUBLISHING, INC., a California corporation,<br><br>              Plaintiff,<br><br>        v.<br><br>META PLATFORMS, INC., a Delaware corporation, and DOES 1 to 20,<br><br>              Defendants. | Case No. 2:26-CV-00752-JFW-AS<br><br>**WIXEN MUSIC PUBLISHING, INC'S FIRST AMENDED COMPLAINT AGAINST META PLATFORMS, INC. FOR:**<br><br>**(1) DIRECT COPYRIGHT INFRINGEMENT**<br>**(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**(3) DEFAMATION**<br>**(4) TRADE LIBEL**<br>**(5) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**JURY TRIAL DEMANDED**<br><br>The Honorable John F. Walter<br><br>Action Filing Date: January 23, 2026 |

4916-8355-8316.1

Case No.

Plaintiff Wixen Music Publishing, Inc., a California corporation ("**Wixen**"), states and alleges as follows for its first amended complaint against Defendant Meta Platforms, Inc., a Delaware corporation ("**Meta**").

**NATURE OF THE ACTION**

1. Wixen brings this action against Meta for willfully infringing the copyrights in the six hundred and eighty-one (681) works listed in **Exhibit A** (each a "**Work**" and collectively the "**Works**"), each of which has been registered with the United States Copyright Office. Since the filing of its first complaint, Wixen has found an additional three hundred and forty-three (343) Works. Wixen believes the actual number of infringed Wixen works to be well over one thousand, and, upon discovery and confirmation, will add additional works to its list of Works that Meta has infringed. Wixen also brings this action against Meta for false and defamatory statements made about Wixen, and for interfering with Wixen's contractual relations.

2. Meta was formerly known as Facebook, Inc., and rebranded to Meta Platforms, Inc. in 2021. Meta owns and operates two social media platforms, Instagram and Facebook, and a messaging app, WhatsApp, which are available to users on the internet or via mobile applications (together, the "**Apps**"). In or around 2020, Meta launched "Instagram Reels" ("**Reels**"), which allows users to create, share, and watch videos. Within a year from its initial launch, Reels became available on Facebook as well. Much like the popular TikTok app, Reels provides users with the ability to easily add music to videos from the libraries of music that Meta provides for its Apps (together, the "**Music Library**").

3. Wixen has a long history of licensing its catalog to Meta for use in videos on its platforms, dating back to before the inception of Reels in 2020. Wixen and Meta began renegotiating the extension of their last license in 2025. The negotiations broke down after Meta refused to pay fair compensation to Wixen and Wixen's clients for the Works. After the negotiations broke down, but before the current license agreement expired, Meta unilaterally chose to remove some of Wixen's current and

former clients' music from the Music Library. This caused the current and former clients' music to be unavailable to fans and for planned musical promotions. Meta then falsely told Wixen's current and former clients that the music was removed by Wixen. Upon information and belief, Meta made these false statements with the malicious intent to strong-arm Wixen into accepting drastically reduced rates for its clients by harming and disrupting Wixen's business and contractual relations with its clients.

4.     All licensed rights terminated no later than December 10, 2025. Since the expiration of the Wixen-Meta License, Meta has, without authorization or compensation, reproduced and made the Works available to its Apps users via Reels and the Music Library, resulting in thousands of audiovisual works incorporating, without authorization or compensation, the Works.

## JURISDICTION AND VENUE

**I.     Parties**

5.     Wixen is a music publisher and a California corporation with its principal place of business in Calabasas, Los Angeles County, California. As previously recognized by this Court, Wixen has standing to bring this action for copyright infringement because it is the exclusive licensee and/or owner of the Works. Wixen has the exclusive right to sign agreements, collect royalties, receive monies, issue synchronization and other licenses, pay royalties, register copyrights, and otherwise interact and assert rights on behalf of each copyright owner with or against musical service companies such as Meta.

6.     Meta Platforms, Inc. is a Delaware corporation headquartered in Menlo Park, San Mateo County, California.

7.     On information and belief, certain officers, directors, owners, and/or agents of Meta have the right and ability to supervise or control the infringing, defamatory, and tortious activity alleged herein, and received a direct financial benefit from that activity, such that they are vicariously liable for Meta's actions. Wixen will

amend this complaint to add said individuals as defendants.

**II.     Jurisdiction**

8.7.    This case is a civil action arising under the copyright laws of the United States, 17 U.S.C. § 101, *et seq.* (the "**Copyright Act**"). This Court has subject matter jurisdiction over Wixen's claims pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction), § 1338(a) (copyright actions), and § 1367(a) (supplemental jurisdiction).

9.8.    The Court has personal jurisdiction over Meta because Meta has continuous and systematic contacts within the Central District of California. Meta has more than 100 offices worldwide offices, including three in Los Angeles, Los Angeles County, California. On information and belief, Meta's platforms – Instagram, Facebook, and WhatsApp – have been advertised, downloaded, and used extensively within Los Angeles County, California.

10.9.  Meta could and did reasonably anticipate being brought into this Court because, among other reasons, Meta (i) has knowingly, intentionally, and repeatedly reproduced and/or distributed the Works over the Internet and via its Apps to Los Angeles County, California residents; (ii) knew or should have known that the harm caused by its repeated unlicensed reproduction and distribution of the Works over the Internet and via its Apps was aimed at artists, songwriters, and music publishers, including Wixen and the songwriters it represents, who control compositions and sound recordings and reside in or near Los Angeles County, California, a global hub of the music industry; and (iii) knew or should have known that Wixen, an industry-leading music publisher for more than 45 years, would suffer, and in fact did suffer, the brunt of the harm caused by Meta's unauthorized use of the Works, defamatory statements, and tortious acts at Wixen's principal place of business in Calabasas, Los Angeles County, California, which is in the Western Division of the Central District of California.

### III.   Venue

11.10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because Meta is subject to personal jurisdiction in this District and because a substantial part of the acts of infringement complained of herein occurs or has occurred in this District.

12.11. This case is properly filed in the Western Division, as a substantial part of events giving rise to this case have occurred here.

**FACTS**

### I.   Background on Wixen and the Works.

13.12. Wixen is a music publisher that was founded by Randall Wixen in 1978. Wixen administers more than 100,000 songs written and/or owned by its more than 2,000 clients, including songs by some of the most popular and acclaimed musical artists of the last 100 years. Wixen administers these works for its clients, with the goal of enhancing the value of the music through licensing while simultaneously preserving its integrity.

14.13. As a publishing administrator, Wixen is the exclusive licensee and/or owner of more than one hundred thousand musical compositions in its catalog, including the Works. While the majority of its catalog is musical compositions, Wixen is also the administrator and exclusive licensee of certain sound recordings.

### II.   Background on Meta and Reels.

15.14. Meta was originally established in 2004 as TheFacebook, Inc., renamed Facebook, Inc. in 2005, and rebranded to Meta Platforms, Inc. in 2021. Meta owns and operates two online social media platforms, Instagram and Facebook, available to users on the internet and as mobile applications. Meta also owns WhatsApp, an internet-based messaging app that it purchased in 2014.

16.15. In or around 2020, Meta released a feature called "Reels" that allows its users to create, share, and watch videos up to 20 minutes long. Originally, Reels was only available to users on Instagram. In or around 2021, Meta expanded Reels to

Facebook. Reels functions similar to the popular TikTok app in that it provides users with the ability to easily add music to their videos from Reels' music library. Users use Reels's video creation tools to create videos of up to 20 minutes in length and synchronize those videos with music from the Music Library to create the videos (or "reels"). Users can choose background music from the Music Library, edit the background music to choose what portions of the song to use in the reels, record a video, edit the video or add filters, and then upload the finished reel to share with others on Instagram, Facebook, and third-party social media platforms. Once uploaded, reels can be viewed, shared, and downloaded by other users. Instagram and Facebook display a Reels tab on their platforms and mobile applications, which are vertical, scrolling, and never-ending feeds of reels, similar to the scrolling features on TikTok or YouTube Shorts. Users can access the Reels tab on Instagram and Facebook by tapping a dedicated button at the bottom of their home screens.

17.16. WhatsApp allows users to upload a photo or video as part of a user's Status and, by tapping on a music note icon, search for and select a music clip from the WhatsApp music library to accompany the photo or video.

18.17. Meta has, without authorization or compensation, reproduced and made the Works available in its Music Library to its Reels and WhatsApp users, resulting in thousands of audiovisual works incorporating, without authorization or compensation, the Works.

19.18. In 2024, Meta announced that Instagram had 3 billion monthly active users, a number that Facebook had already reached by 2023. Facebook has grown from a handful of college campuses to 240 million active American users. Meta's advertising revenue has swelled to $161 billion in 2024, with much of its growth attributable to Reels.

20.19. A majority of Americans' time on Facebook and Instagram is spent watching videos, and both apps have shifted to primarily showing Reels. Adam Mosseri, the Head of Instagram, testified about how central Reels is to that app: "[W]e

integrated Reels throughout the entire experience. We added them to feed. … We added them to explore. We added them to the create flow. We added them to the Reels tab itself, and we added a Reels tab within the profile. So every tab … across Instagram had Reels integrated in some way across them." A 2024 Morgan Stanley study found that 37% of Instagram users in the United States now use Instagram Reels daily, and 78% of U.S. Instagram users engage with Reels monthly.

21.20. Attached as **Exhibit B** are multiple screenshots that are examples of how Works appeared, and still appear, in the Music Library after the termination of the Wixen-Meta License. The example below shows a step in the process of searching for music in the Music Library to add music to a reel, in this case showing the compositional Work "Light My Fire":



22.21.Instagram and Facebook users can search the name of a song or tap the name of the music audio at the bottom of a reel and they will be provided with a feed of other reels that have also used that same music audio. The screenshot below is of the search result provided by Instagram when a user searches the Music Library for the compositional Work "Mr. Roboto." It shows that 300 reels have been created using that Work, as incorporated into that specific sound recording.



23.22. Meta also allows users to browse and listen to different songs that are featured or trendy, or search for specific songs on their Reels creation tool.

24.23. Meta admits publicly that it must license the music in its Music Library, and that it must uphold its agreements with rights holders, as evidenced by these screenshots from the Instagram, Facebook and WhatsApp Help Centers:





## III.    The Licensing Arrangement Between Wixen and Meta.

25.24. Since approximately March 14, 2018, Wixen has licensed its catalog to Meta, its predecessors including Facebook Inc., and/or its affiliates via different licenses and amendments thereto (together, the "**Wixen-Meta License**") that govern the use of Wixen's catalog on Meta's platforms, including Instagram, Facebook, and WhatsApp. Apps.

26.25. The Wixen-Meta License terminated no later than December 10, 2025.

27.26. In or about March 2025, Wixen and Meta began negotiating another renewal of the Wixen-Meta License. Despite the massive increase in the use and importance of Reels, Meta sought to drastically cut the license rates, to a small fraction of what Wixen and, therefore, Wixen's clients, had received over the past seven years under the Wixen-Meta License. Wixen refused.

28.27. On information and belief, Meta's reason for slashing payments to songwriters is to replace human-generated, royalty-bearing music with royalty-free AI-generated music. Coincident with its plan to drastically cut payments to human songwriters, including Wixen's clients, Meta has committed hundreds of billions of dollars to building artificial intelligence data centers in the U.S. and has spent millions on lobbying politicians and launching two super PACs aimed at deregulating artificial

intelligence. These staggering financial commitments come as Meta is building its new artificial intelligence tool, "AudioCraft," which generates music from text prompts and directly threatens the future and livelihood of musical artists.

29.28. Meta's success or failure at slashing royalties now will have a profound effect on how other social media platforms approach music royalties. Given these serious implications for its clients, Wixen refused to accept the exploitative, below-industry rates for its clients. The Wixen-Meta License was not renewed.

**IV.   Meta Removes Wixen's Current and Former Clients From Its ~~Platforms~~Apps.**

30. 29. Rather than engaging in good-faith negotiations to renew the Wixen-Meta License, Meta engaged in unscrupulous and ultimately illegal tactics to try, unsuccessfully, to strong-arm Wixen into accepting a drastically lower license fee.

31. 30. In or around late October 2025, despite Wixen's music being under license to Meta, Meta began removing the music of certain Wixen clients from its ~~platforms~~Apps. Meta's clear intention behind this unnecessary removal was to damage Wixen's relations with its clients. As a tech behemoth with outsize market share, Meta knew that many Wixen clients value having their music available in the Music Library. As Meta intended, a number of Wixen's clients contacted Wixen to inquire why their music had been removed from Meta's ~~platforms~~Apps.

32. 31. Rather than merely block access to its ~~platforms~~Apps for licensed Wixen works, Meta then lied to Wixen clients and their managers about the reasons for the removal of their music from Facebook and Instagram. Rather than own up to the truth that Meta chose, unilaterally, to remove licensed music, Meta told Wixen clients and their representatives that Meta removed their songs because Meta was unable to renew its agreement with Wixen. Further, Meta falsely told these clients and their representatives that *Wixen* was muting and blocking the clients' music on Meta's ~~Platform~~Apps. Another Wixen client was told by Meta that their music would not be available until "the publisher of the music has resolved the issue with Meta directly."

These statements were misleading and false. Wixen had not muted or blocked its clients' music from Meta's ~~platforms~~Apps prior to the termination of the Wixen-Meta License. Meta's statements misled clients to believe that Wixen had caused their music to be removed, despite the music being fully licensed under the Wixen-Meta License.

~~33.~~32. Where Meta's pressure campaign was successful and Wixen clients left Wixen in order to have their music appear on Meta's ~~platforms~~Apps, Meta then exacted further revenge by electing not to put their music back up and falsely blaming Wixen for Meta's own decision. By disseminating these falsehoods to the managers of Wixen's clients, including many prominent managers in the music business, Meta painted a false and damaging picture of Wixen to a broad swath of clients and potential clients.

33. "Former Client 1" is the estate of a prominent musician and songwriter who was a long-time client of Wixen until the end of their administration agreement in 2024. As is customary, Wixen confirmed to Meta around the time of the termination that it relinquished all claims to Former Client 1's music. On information and belief, Former Client 1's music had been on Meta's Apps without problems since that time through a license with its new publisher, "Publisher 1." As part of its unlawful strong-arm negotiation strategy, Meta removed Former Client 1's music from its Apps in late 2025 and intentionally and knowingly lied to Publisher 1, saying that it had to remove the music because Wixen had made a claim on their music as recently as October 27, 2025, and therefore, the music could not be reinstated on the Apps. In truth, Wixen had not made any claim on this former client's music since 2024. Indeed, it appears that Meta had been licensing Former Client 1's music directly from Publisher 1, and paying Publisher 1 royalties for Former Client 1's music, for approximately two years. Meta was well aware at all relevant times that Wixen had stopped claiming rights to Former Client 1's music years ago. Even if it was true that Wixen claimed Former Client 1's music in October 27, 2025, this was during the term of the Wixen-Meta

4916-8355-8316.1                          -12-                    Case No.  2:26-CV-00752-JFW-AS
                                 FIRST AMENDED COMPLAINT

License, and therefore it would have been Meta's unilateral decision to take down Former Client 1's music. Meta clearly removed Former Client 1's music from its Apps and lied about the reasons with the intention of harming Wixen.

34.     Former Client 1 is represented by a global management company ("Management Company 1") with many prominent clients who are also potential clients of Wixen. Meta is well aware of how the music industry functions, and that managers and attorneys will be promptly made aware of any licensing problems, particularly where Meta controls a significant market share. Indeed, it was Management Company 1, not Publisher 1, that followed up with Wixen regarding the removal of Former Client 1's music from Meta's Apps. On information and belief, the heads of Management Company 1 believed and continue to believe Meta's falsehoods and blame Wixen for problems with Former Client 1's music appearing on the Apps – even when those clients are signed to other publishers – severely damaging Wixen's reputation and making it nearly impossible for Wixen to represent any artist represented by Management Company 1.

35.     "Former Client 2" is a successful independent record label with several prominent artists who had signed a publishing administration agreement with Wixen, wherein Wixen administered Former Client 2's compositions in return for a percentage of the royalties it collected. On information and belief, prior to the expiration of the Wixen-Meta License, in November or early December 2025, while Former Client 2 was still under contract with Wixen, Meta removed Former Client 2's music from its Apps and told Wixen's Former Client 2 that "Wixen simply needs to upload some forms" in order to reinstate their music on Meta. This statement was false. Meta's intentionally false statements were intended to, and did, lead Former Client 2 to believe that Wixen willingly refused to engage in routine elements of publishing administration, and that this purported refusal by Wixen is what caused its music to be blocked on the Apps. Despite numerous attempts by Wixen to correct Meta's misstatements, Former Client 2 maintained this incorrect belief and forced an

early termination of its administration agreement with Wixen, resulting in a loss of revenue to Wixen.

36.    After the early termination of its administration agreement with Former Client 2, Wixen provided Meta with industry-standard notices that it no longer claimed rights to Former Client 2's music. Meta routinely recognizes such notices and reinstates licensed music, yet, on information and belief, it continued to keep Former Client 2's music off the Apps and falsely state to Former Client 2 that this was Wixen's fault in order to further damage Wixen and tarnish its reputation in the music industry. On information and belief, Former Client 2 continues to believe that Wixen is at fault for its music being unavailable on Meta both during and after the terms of the Wixen-Meta License and its administration agreement with Wixen, including after Wixen provided Meta industry-standard notices of relinquishment. In addition to the lost revenue from its agreement with Former Client 2 – an agreement that Meta was well aware of, since it dealt with Wixen as the administrator of Former Client 2's compositions – Meta's false and disparaging statements have resulted in the loss of business opportunities for Wixen because Former Client 2 and its representatives have, on information and belief, conveyed to each of the many artists that they work with, and others in the music industry, that Wixen refuses to provide routine publishing administration services. On information and belief, because of Meta's lies, Former Client 2 wrongly conveyed – and continues to wrongly convey – to its artists and others that it works with that Wixen is solely at fault for all loss of sound recording and composition royalties, promotional value and goodwill because of its lack of competence in providing basic publishing administration services.

37.    "Former Client 3" is a successful rock band that was under contract with Wixen – an administration agreement whereby Wixen administered Former Client 3's compositions in exchange for a percentage of the royalties it collected. For no justifiable reason, Meta removed Former Client 3's music during the term of the Wixen-Meta Agreement and then made false and misleading statements to Former

Client 3's representatives, blaming Wixen for the removal, which caused irreparable harm to the contractual relationship between Wixen and Former Client 3. Meta's false and misleading statements forced Wixen to terminate its administration agreement with Former Client 3 early, resulting in a loss of revenue to Wixen. After the termination of its administration agreement with Former Client 3, and prior to November 24, 2025, Wixen proactively and promptly engaged in industry-standard relinquishment procedures, in concert with Former Client 3's new publisher ("Publisher 2"), to inform Meta that it had relinquished its claims to Former Client 3's music, and that those rights were now with the new publisher.

38.    On or about November 24, 2025, Former Client 3's management company ("Management Company 2") emailed Meta to inquire as to the status of Former Client 3's music on Meta, noting that Wixen had relinquished its claims. On or about the same date, Meta's Natalie Echols, in her capacity as a Meta employee and representative, and specifically the North America Music Publishing Partnerships Manager at Facebook, responded by email, in pertinent part:

> "We appreciate you sharing confirmation of [Publisher 2's] recent CWR submission for the US and US territories. We can confirm that the file was successfully ingested.
>
> As we've previously shared with both you and Wixen, publishers must resolve their ownership conflicts and disputes directly with each other and send the necessary catalog updates (via CWR, MWN, or FB_CSV) and relinquishment files via our data exchange processes in order to make these updates within our systems.
>
> As such, Wixen will need to deliver a bulk relinquishment file as per our standard data delivery processes in order for them to relinquish their claims to these works in Rights Manager. We've reminded Wixen of this process, and I've attached the Relinquishment Template and Relinquishment Guide for your reference.

4916-8355-8316.1

-15-

Case No.  2:26-CV-00752-JFW-AS

FIRST AMENDED COMPLAINT

> At this time, we recommend that [Publisher 2] reaches out to the appropriate point of contact at Wixen Music Publishing to resolve this directly with Wixen.
>
> Best regards,
> Natalie Echols"

39. These statements by Meta's Natalie Echols are false and misleading, and intended to cause harm to Wixen's reputation and make it more difficult for Wixen to solicit clients. They further Meta's goal of punishing independent music publishers like Wixen who demand market-rate license fees.

34.40. The Wixen-Meta License has an agreed-upon mechanism (the "**Data Exchange Process**") for addressing changes in ownership, control and administration. Where a client left Wixen due to Meta's pressure campaign, Wixen not only fulfilled its contractual obligation via the Data Exchange Process, but took further reasonable and customary steps to confirm the transfer of rights to a new administrator, including to confirm confirming via email the claim of rights by a new administrator. These steps have been, and continue to be, used consistently and constantly by music publishers and licensees, including Meta. Rather than engage in the customary relinquishment process – which Meta has done and continues to do on countless occasions with other music publishers – Meta invented a new, onerous, and flawed "relinquishment process" and then claimed that (i) Wixen had to follow it (false), (ii) Wixen did not follow it (true), and (iii) Wixen's failure to follow the arbitrary relinquishment process was the reason why Meta could not make the former Wixen's client's music available on Meta's platforms Apps (false). Meta has continued to act in bad faith throughout the denouement of the licensing arrangement with Wixen. When Wixen pointed out to Meta and a former client all the steps it had taken to relinquish a claim, including the Data Exchange Process, and why the "relinquishment process" that Meta invented was flawed, Meta's sole response was

to falsely claim that Wixen had divulged confidential information. Tellingly, where it has been in Meta's interest to make the music of former Wixen clients accessible on Meta's Apps, Meta has had no issue with Wixen's relinquishment procedures. Meta's "relinquishment process" was a pretext and part of a concerted, untruthful, and unlawful pressure campaign by Meta against Wixen.

41. Additionally, Management Company 2 is a prominent music management company that represents many successful rock, country and folk artists. On information and belief, due to Meta's lies and campaign of misinformation, the heads of Management Company 2 and their employees, as well as the attorneys and other representatives of Management Company 2's artists, falsely believe that Wixen refuses to engage in basic publishing administration and even falsely believe that Wixen intentionally or around early November 2025, a recklessly harms its clients and former Wixen client contacted Wixen to confirm whether it had relinquished claims to the former client's catalog. clients. Meta's misrepresentations have significantly damaged the opportunity for Wixen confirmed it relinquished all claims when its rights terminated to represent artists who are represented by Management Company 2.

42. Former Client 3's attorney ("Attorney 1") was involved in 2024. Nonetheless, and fully aware of the issues that Meta falsely created and the lies it told this former client that regarding Former Client 3's music. Attorney 1 is a prominent attorney in the music business who represents many successful artists, including "Potential Client 1." Wixen had made a claim on their music as recently as October 27, 2025, and therefore, the music could not be reinstated on Meta's platforms. was engaged in discussions with Potential Client 1 to have Wixen had not made any claim on this former client's music since 2024. administer his publishing. On information and belief, because Meta's lies and misrepresentations caused Attorney 1 to believe, wrongly, that Wixen's services are terrible, and specifically that Wixen refuses to handle basic publishing administration, Wixen lost the opportunity to enter into an

administration agreement with Potential Client 1 and lost the resultant income Wixen would receive from administering Potential Client 1's publishing.

35.43. Meta repeated this deceptive practice on or about January 13, 2026, when it told another music publisher that their client's entire "in December 2025 and January 2026 with other former Wixen clients ("Former Clients 4"). Former Clients 4 were prolific songwriters and members of a prominent rock band who terminated their administration agreements with Wixen when they sold their catalog several years ago. Wixen engaged in the usual and customary relinquishment process to enable a transition of song administration to the new owner (the "Catalog Purchaser") and/or its publisher. On information and belief, Former Clients 4's music was available on Meta's Apps for years pursuant to a license to Meta from either Catalog Purchaser or its new publisher. Meta was well aware from that relinquishment procedure and from Wixen's regular catalog updates that Wixen has not claimed rights to Former Clients 4's songwriting rights for many years. Despite this knowledge, on or about December 10, 2025, Meta took down all of Former Clients 4's music and blamed Wixen for this. Wixen received an email from the Catalog Purchaser on that date, saying that "Wixen had engaged in some take down of music on the Meta platforms, notably Instagram." To take down music to which one does not have rights is not only illegal, it would also tarnish any publisher's reputation. Ergo, the email further stated "If this is incorrect entirely and Wixen haven't initiated this, then please accept my apologies, im [*sic*] only going on info that has come to us from the label." Wixen responded the same day to state that it had never instituted such a takedown regarding those works and had no idea why Meta would suggest Wixen was claiming rights to these songs. In that email, Wixen also confirmed that it was not claiming rights to Former Client 4's songwriting rights. Despite this attempt by Wixen to clarify the situation (which had been clear for years), Meta refused to reinstate Former Client 4's music and instead doubled down on its lies. On or about January 14, 2026, Wixen received an email from the Catalog Purchaser's publisher, which quoted an email from Meta of

the previous day, in which Meta stated, "After our internal review, I can confirm that the [Former Clients 4's] catalog is currently unavailable on our platforms due active ownership claims by Wixen Music Publishing." There were no such claims.This statement was untrue. Even a cursory "internal review" would have shown that Wixen had not claimed Former Clients 4's music for several years. Meta made similar, and similarly false, claims to representatives of other former clients of Wixen's and third parties who have never been represented by Wixen to "explain" why it had removed their music from its Apps. By disseminating these falsehoods to music managers and other artist representatives, Meta knew that it would adversely affect Wixen's relationships and reputation across the music industry., causing it to lose opportunities to gain new clients.

36.44.Meta unilaterally chose to pull Wixen's current and former clients from its platformsApps. Meta did this while the Wixen-Meta License was still in place. Wixen did not mute or block any of its current or former clients' music on Meta's platformsApps, nor did Wixen submit claims to Meta for catalogs it no longer owned or administered.

37.45.Upon information and belief, Meta's conduct and statementsmisstatements to Wixen's current and former clients and their representatives were intended to pressure Wixen into accepting renewed license rates that are a small fraction of what Wixen and its clients have received over the past seven years. Meta then maligned Wixen and blamed it for Meta's own actions, in the hopes that Wixen clients would complain and even leave, and that potential clients would avoid hiring Wixen. Meta's lies caused damage, including loss of revenue, and extreme disruption to Wixen's reputation, business, and services to its clients.

## V.    Meta's Infringing Activities.

38.46.Ironically, after claiming that Wixen's catalog was worth a fraction of its previous value and that it had to take down Wixen music while it was still under license, Meta has continued – and still continues – to use the Works after the

termination of the Wixen-Meta License.

39.47. Despite the termination of the Wixen-Meta License, Meta still allows and encourages Users users to use the Music Library on Reels to find the Works, create new reels incorporating the Works, and distribute the Works publicly, as incorporated into reels. Meta is making the Works available to users on its Apps, including by cataloging them, promoting them via Meta-curated playlists, and making them available through its Music Library, all without authorization or payment.

40.48. On information and belief, thousands of reels created on or after December 10, 2025, incorporate the Works without authorization or compensation.

41.49. To legally reproduce and/or distribute the Works via the Music Library and its Apps, and to synchronize and allow the synchronization of the Works with videos on Reels, Meta was required to obtain permission from Wixen.

42.50. Meta could have renewed the Wixen-Meta License with Wixen to maintain the necessary licenses for the Works on its platforms Apps and reasonably compensate Wixen and Wixen's clients. Meta could have also stopped making use of the Works in reels its Apps once the Wixen-Meta License terminated. Instead, it attempted to pressure Wixen into accepting unfair terms and then brazenly disregarded copyright law and committed willful and ongoing copyright infringement.

43.51. Meta launched over 20 years ago and is, on information and belief, worth as much as $1.62 trillion. Instagram and Facebook are two of the biggest social media platforms by worldwide active users. In October 2025, Meta announced that Reels is on track to generate $50 billion in advertising revenue in the next 12 months. By comparison, YouTube is expected to bring in $46 billion, and TikTok is expected to bring in $17 billion. Despite Meta's reliance on the content of songwriters and artists for Reels's massive financial success, Meta refuses to pay Wixen and the musical artists Wixen represents fair compensation to use their Works. Instead, Meta has spent millions, and plans to spend hundreds of billions, to create artificial intelligence to

4916-8355-8316.1                                    -20-                    Case No.  2:26-CV-00752-JFW-AS
FIRST AMENDED COMPLAINT

displace these same musical artists.

44.52.Meta knows that artists and their music, including the Works, are irreplaceable. Users want the real thing. As Meta's Head of Instagram wrote in a post of December 31, 2025, looking forward to 2026 and a future teeming with AI, "Authenticity is becoming a scarce resource, driving more demand for creator content, not less." That future, and the present, must include Meta paying content creators fairly.

45.53.Rather than negotiate a fair license, Meta has now taken the further step of trying to pay Wixen and Wixen clients **nothing** for the use of their Works in its Apps.

46.54.For the foregoing reasons, Wixen is entitled to the maximum statutory relief.

## FIRST CLAIM FOR RELIEF

### (Direct Copyright Infringement)

47.55.Wixen realleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 4654 above as though fully set forth.

48.56.Wixen is the owner and/or exclusive licensee of the copyright in each Work. Wixen's exclusive rights include the rights to issue synchronization licenses and to authorize the creation of derivative works.

49.57.Under Section 106 of the Copyright Act, Wixen has the exclusive rights, among other rights, to reproduce and distribute each Work, and to permit the creation of derivative works incorporating each Work, as well as the right to authorize others to exercise any of these rights.

50.58.Meta has infringed many of the exclusive rights set forth in 17 U.S.C. § 106. Among other things, Meta has made unauthorized reproductions of the Works in its Apps, including in synchronization with videos; engaged in unauthorized distribution of the copyrighted Works; engaged in the unauthorized creation of derivative works based on the Works; and publicly performed the Works without

authorization. Such conduct constitutes copyright infringement pursuant to 17 U.S.C. §§ 106 *et seq*.

51.59. Each Work is an original work fixed in a tangible medium of expression and is a copyrightable subject matter within the meaning of Section 102 of the Copyright Act.

52.60. Each Work reproduced by Meta and/or made accessible by Meta to its users via Meta's Apps constitutes a separate and distinct act of infringement. In addition, Meta's reproduction and distribution of each Work in the Apps' music libraries and its promotional materials constitutes a separate and distinct act of infringement, for which Meta is a direct infringer.

53.61. Meta's conduct has at all times been willful, intentional, purposeful, and in disregard of and indifferent to the rights of Wixen.

54.62. As a direct and proximate result of Meta's willful and infringing conduct, Wixen is entitled to its actual damages and, to the extent not taken into account in computing Wixen's actual damages, the profits of Meta, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

55.63. In the alternative, pursuant to 17 U.S.C. § 504(c), Wixen is entitled to receive the maximum amount of statutory damages for willful copyright infringement of $150,000 per work infringed, for the sum of at least forty-nine million six one hundred and two million one hundred fifty thousand dollars ($49,650102,150,000), as will be proven at trial.

56.64. Wixen is further entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

57.65. Meta's acts, including its failure to develop and implement procedures to properly license compositions and sound recordings for use on its Apps, have caused and will continue to cause irreparable harm and injury to Wixen and the songwriters it represents, for which they have no adequate remedy at law. Wixen is therefore entitled to an injunction pursuant to 17 U.S.C. § 502 to prevent and restrain

Meta's ongoing copyright infringement.

## SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

58.66.Wixen realleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 5765 above as though fully set forth.

59.67.Wixen is the owner and/or exclusive licensee of the copyright in each Work. Wixen's exclusive rights include the rights to issue synchronization licenses and to authorize the creation of derivative works.

60.68.Under Section 106 of the Copyright Act, Wixen has the exclusive rights, among others, to reproduce and distribute each Work, and to permit the creation of derivative works incorporating each Work, as well as the right to authorize others to exercise any of these rights.

61.69.Meta's users have infringed many of the exclusive rights set forth in 17 U.S.C. § 106. Among other things, Meta's users have made unauthorized reproductions of the Works, including in synchronization with videos; engaged in unauthorized distribution of the copyrighted Works; engaged in the unauthorized creation of derivative works based on the Works; and publicly performed the Works without authorization. Such conduct constitutes copyright infringement pursuant to 17 U.S.C. §§ 106 *et seq*.

62.70.Meta knew or had reason to know that its users infringed the copyrights in the Works.

63.71.Meta intentionally induced and/or materially contributed to its users' infringing activity.

64.72.As a direct and proximate result of Meta's willful and infringing conduct, Wixen is entitled to its actual damages and, to the extent not taken into account in computing Wixen's actual damages, the profits of Meta, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

65.73.In the alternative, pursuant to 17 U.S.C. § 504(c), Wixen is entitled to

receive the maximum amount of statutory damages for willful copyright infringement of $150,000 per work infringed, for the sum of at ~~least forty-nine million six~~one hundred and two million one hundred fifty thousand dollars ($~~49,650~~102,150,000), as will be proven at trial.

~~66.~~74. Wixen is further entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

~~67.~~75. Meta's acts, including its failure to develop and implement procedures to properly license compositions and sound recordings for use on its Apps, have caused and will continue to cause irreparable harm and injury to Wixen and the songwriters it represents, for which they have no adequate remedy at law. Wixen is therefore entitled to an injunction pursuant to 17 U.S.C. § 502 to prevent and restrain Meta's ongoing copyright infringement.

### THIRD CAUSE OF ACTION

### (Defamation)

~~68.~~76. Wixen realleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through ~~67~~75 above as though fully set forth.

~~69.~~77. Meta made written statements to other music publishers, music labels, managers, attorneys, and artists, including Wixen's current and former clients and their representatives, that their music was removed from Meta's ~~platforms~~Apps because of Wixen, and that Meta could not reinstate the songs ~~onto~~on their ~~platforms~~Apps until Wixen released its claims or resolved its "issues" with Meta.

~~70.~~78. The music publishers, music labels, managers, attorneys, and artists reasonably understood that these statements were about Wixen.

~~71.~~79. These statements were false. Wixen did not take any action to remove its current and former clients' music from Meta's ~~platforms~~Apps. Additionally, Wixen had not made claims ~~on~~to music for which it no longer had rights~~to~~. Meta unilaterally decided to remove the music at issue from its ~~platforms~~Apps.

~~72.~~80. Meta knew that these statements were false or had serious doubts about

the truth of the statements.

73.81. Because of the facts and circumstances known to the readers of the statements, they tended to injure Wixen and Wixen's business, and discourage others from associating or dealing with Wixen.

74.82. Meta knew or should have recognized that other music publishers, music labels, managers, attorneys, artists, and Wixen's clients might act in reliance on Meta's statements, causing Wixen financial loss.

75.83. As a result, Wixen suffered direct financial harm because Wixen's clients acted in reliance on Meta's statement to terminate their contracts and business relationship with Wixen.

76.84. Meta's conduct was a substantial factor in causing Wixen substantial disruption to its business, operations, services, and client relationships.

77.85. As a direct and proximate result of Meta's conduct, Wixen has suffered and continues to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial, but no less than twenty million dollars ($20,000,000).), as evidenced by a drop in revenue since Meta began defaming Wixen and other financial metrics. Wixen is entitled to recover from Meta the damages sustained by it as a result of Meta's false and disparaging comments. Wixen is further entitled to recover from Meta the gains, profits, and advantages it has obtained as a result of the false and disparaging comments, in an amount to be determined.

78.86. Wixen is also entitled to an injunction restraining Meta, its agents, employees, and all persons acting in for them, from making further false and disparaging comments.

### FOURTH CAUSE OF ACTION

### (Trade Libel)

79.87. Wixen realleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 7886 above as though fully set forth.

80.88. Meta made statements that would be clearly or necessarily understood to

have disparaged the quality of Wixen's services as a music publisher.

81.89. Specifically, Meta made written statements to other music publishers, music labels, managers, attorneys, and artists, including Wixen's current and former clients, that their music was removed from Meta's platforms Apps due to claims made or actions taken by Wixen, and that Meta could not reinstate the Works onto its platforms Apps until Wixen released its claims or resolved its "issues" with Meta.

82.90. These statements were untrue. During the relevant period and prior to December 10, 2025, Wixen did not take any action to remove its current and former clients' music from Meta's platforms Apps. Additionally, Wixen had not made claims on music it no longer had rights to. Meta unilaterally decided to remove the music at issue from its platforms Apps.

83.91. Meta knew that these statements were untrue, or acted with reckless disregard of the truth or falsity of the statements.

84.92. Meta knew or should have recognized that other music publishers, music labels, artists, and Wixen's clients might act in reliance on Meta's statements, causing Wixen financial loss.

85.93. As a result, Wixen suffered direct financial harm because Wixen's clients acted in reliance on Meta's statement to terminate their contracts and business relationship with Wixen.

86.94. Meta's conduct was a substantial factor in causing Wixen substantial disruption to its business, operations, services, and client relationships.

87.95. As a direct and proximate result of Meta's conduct, Wixen has suffered and continues to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial. Wixen is entitled to recover from Meta the damages sustained by it as a result of Meta's false and disparaging comments. Wixen is further entitled to recover from Meta the gains, profits, and advantages it has obtained as a result of the false and disparaging comments, in an amount to be determined.

88.96. Wixen is also entitled to an injunction restraining Meta, its agents,

employees, and all persons acting in for them, from making further false and disparaging comments.

### FIFTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

89.97. Wixen realleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 8896 above as though fully set forth.

90.98. Wixen has contracts with its clients to administer compositions and/or sound recordings for its clients, with the goal of enhancing the value of those works through licensing while simultaneously preserving their integrity.

91.99. Meta knew of the contracts and knew that Wixen is a prominent music publisher that provides these services to its clients.

92.100.    Meta's removal of Wixen's clients' music from its platformsApps combined with Meta's false and/or misleading statements to Wixen's clients prevented Wixen's performance or made Wixen's performance more expensive or difficult.

93.101.    Meta intended to disrupt the performance of these contracts or knew that disruption of performance was certain or substantially certain to occur.

94.102.    As a result, Wixen suffered direct financial harm.

95.103.    Meta's conduct was a substantial factor in causing Wixen's harm.

### PRAYER FOR RELIEF

WHEREFORE, Wixen seeks relief as follows:

1.    An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of Meta that are not taken into account in computing the actual damages, as will be proven at trial, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c), $150,000 per infringement, as will be proven at trial;

2.    Injunctive and/or declaratory relief as is necessary to protect the interests of Wixen pursuant to 17 U.S.C. § 502, including requiring Meta to (a) develop and

4916-8355-8316.1                                    -27-                    Case No.  2:26-CV-00752-JFW-AS
FIRST AMENDED COMPLAINT

implement procedures for identifying and properly licensing songs on its platforms, including Instagram, Facebook, and WhatsApp; and (b) pay for the services of a third party auditor to identify the owners of songs reproduced and/or distributed by Meta on its platforms, including Instagram, Facebook, and WhatsApp;

3. Injunctive relief against Meta enjoining it from making false, deceptive, and disparaging statements against Wixen and from instructing its agents and employees from doing the same;

4. Injunctive relief against Meta enjoining it from interfering with Wixen's contractual relations and from instructing its agents and employees to do the same;

5. Compensatory, punitive, and other damages in an amount to be proven at trial;

6. Attorneys' fees and costs pursuant to 17 U.S.C. § 505 and under other applicable law;

7. Pre- and post-judgment interest to the extent allowable; and

8. Such other and further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Wixen demands a trial by jury in this action.

Dated:  ~~January 23~~May 15, 2026      DONAHUE FITZGERALD LLP
                                        Attorneys at Law


By: _____
    Daniel J. Schacht
    Andrew S. MacKay
    Padmini Cheruvu
    Stephanie L. Gonzalez
    Megan C. Cronin
    Attorneys for Plaintiff WIXEN MUSIC
    PUBLISHING, INC.

4916-8355-8316.1                    -29-                Case No.  2:26-CV-00752-JFW-AS
                          FIRST AMENDED COMPLAINT