MAYER BROWN LLP
MATTHEW D. INGBER (*pro hac vice*)
ALLISON AVIKI (*pro hac vice*)
RORY K. SCHNEIDER (*pro hac vice*)
DAVID YOLKUT (*pro hac vice*)
*mingber@mayerbrown.com*
*aaviki@mayerbrown.com*
*rschneider@mayerbrown.com*
*dyolkut@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:  (212) 506-2500

MICHAEL A. CALVANICO (SBN 344792)
*mcalvanico@mayerbrown.com*
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071-1575
Telephone:  (213) 229-9500

Attorneys for Defendant
META PLATFORMS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WIXEN MUSIC PUBLISHING, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation, and DOES 1 to 10,<br><br>Defendants. | Case No. 2:26-CV-00752-JFW-AS<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>The Honorable John F. Walter<br><br>Date: August 3, 2026<br>Time: 1:30 p.m.<br>Location: 7A<br><br>**ORAL ARGUMENT REQUESTED** |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on August 3, 2026[1] at 1:30 p.m., in Courtroom 7A of the above-captioned court, located at 350 W. 1st Street in Los Angeles, California, Defendant META PLATFORMS, INC. will and hereby does respectfully move for an order dismissing the First Amended Complaint, Dkt. No. 27 ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

This Motion is based on this Notice of Motion and the Memorandum of Points and Authorities filed concurrently herewith, all pleadings and filings in this matter, and any further argument or evidence as the Court may consider before ruling on this Motion.

### L.R. 7-3 Statement of Compliance

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on Monday June 8, 2026. *See* Declaration of Michael Calvanico in Support of Defendant's Motion to Dismiss ("Calvanico Decl.") at ¶ 3. Counsel conferred in good faith but were unable to reach a resolution on the issues presented in this Motion. *Id.*

Dated:  June 15, 2026

Respectfully submitted,

MAYER BROWN LLP

BY: */s/ Matthew D. Ingber*
  Matthew D. Ingber
  Allison Aviki
  Rory K. Schneider
  David Yolkut
  *mingber@mayerbrown.com*
  *aaviki@mayerbrown.com*

---

[1] Section 5(a) of this Court's Standing Order requires parties to notice any motion hearing for a Monday within 35 calendar days after service of the motion. *See* Dkt. No. 9. The Court's Motion Calendar indicates, however, that all available Monday hearing dates within that time range are closed. Counsel for Meta reached out to the Court's Deputy Clerk concerning this issue and received instructions to notice the next available date (*i.e.*, August 3, 2026).

*rschneider@mayerbrown.com*
*dyolkut@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500

Michael D. Calvanico
*mcalvanico@mayerbrown.com*
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071-1575
Telephone: (213) 229-9500

Attorneys for Defendant
META PLATFORMS, INC.

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................3

    A.    The Wixen-Meta License And Its Termination......................................3

    B.    Meta's Pre-Termination Communications With Stakeholders..............4

    C.    The Alleged Post-Termination Infringement.........................................6

LEGAL STANDARD .....................................................................................................7

ARGUMENT...................................................................................................................7

I.     WIXEN'S COPYRIGHT CLAIMS FAIL FOR LACK OF STANDING ......7

    A.    Wixen Has Not Plausibly Alleged That It Holds The Exclusive
        Rights Needed To Bring Its Copyright Claims.....................................7

    B.    Wixen Fails To Plead Standing As To Pre-1978 Works .....................10

II.    WIXEN FAILS TO ADEQUATELY ALLEGE DIRECT COPYRIGHT
     INFRINGEMENT AS TO 652 OF THE WORKS AT ISSUE ......................11

III.   WIXEN FAILS TO ADEQUATELY ALLEGE CONTRIBUTORY
     INFRINGEMENT ..........................................................................................12

IV.   WIXEN FAILS TO ADEQUATELY ALLEGE DEFAMATION................14

    A.    The Alleged Statements Are Not Reasonably Susceptible of a
        Defamatory Meaning .........................................................................15

    B.    Wixen Fails To Adequately Plead Falsity .........................................16

V.    WIXEN FAILS TO ADEQUATELY ALLEGE TRADE LIBEL ...............18

    A.    The FAC Fails To Plead Disparaging Statements .............................18

    B.    Wixen Fails To Plead Special Damages With Particularity ................20

VI.   WIXEN FAILS TO ADEQUATELY ALLEGE INTENTIONAL
     INTERFERENCE WITH CONTRACTUAL RELATIONS........................22

    A.    Wixen Does Not Identify Any Specific Contract That Meta
        Allegedly Interfered With ..................................................................22

    B.    Wixen Fails to Adequately Allege Disruption Or Damages ..............24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7EDU Impact Academy Inc. v. You*,
760 F. Supp. 3d 981 (N.D. Cal. 2024)...................................................................23

*A&M Records., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .............................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................7, 9, 12

*Baker v. Los Angeles Herald Examiner*,
42 Cal. 3d 254 (1986) ....................................................................................14, 15

*Balistreri v. Pacifica Police Department*,
901 F.2d 696 (9th Cir. 1990) .................................................................................7

*Bell Atlantic. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................7, 12

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015)...............................................................12

*BWP Media USA, Inc. v. Linkbucks.com*,
LLC, 2014 WL 12596429 (C.D. Cal. Aug. 8, 2014) (Walter, J.) ...................7, 13

*Cable Vision, Inc. v. KUTV, Inc.*,
335 F.2d 348 (9th Cir. 1964)................................................................................10

*Couch v. San Juan Unified School District*,
33 Cal. App. 4th 1491 (1995)...............................................................................17

*Dolman v. Agee*,
157 F.3d 708 (9th Cir. 1998) ...............................................................................10

*Dongguan Beibei Toys Industry Co. v. Underground Toys USA, LLC*,
2019 WL 8631502 (C.D. Cal. Dec. 16, 2019) .....................................................24

*Electronic Waveform Lab Inc. v. Work-Loss Data Institute, LLC*,
2015 WL 12684232 (C.D. Cal. Aug. 25, 2015)....................................................20

*Erlich v. Etner*,
224 Cal. App. 2d 69 (1964) ...................................................................................... 20

*Films of Distinction, Inc. v. Allegro Film Productions., Inc.*,
12 F. Supp. 2d 1068 (C.D. Cal. 1998) ............................................................... 18, 19

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ........................................................................... 22, 24

*Gill v. Hughes*,
227 Cal. App. 3d 1299 (1991) .................................................................................. 16

*Hartford Casualty Insurance. v. Swift Distribution, Inc.*,
59 Cal. 4th 277 (2014) ....................................................................................... 18, 20

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) ........................................................... 20

*Innovatel Services, Inc. v. First Bridge Merchant Solutions, LLC*,
2021 WL 3415218 (C.D. Cal. Mar. 19, 2021) .......................................................... 22

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
12 F. Supp. 2d 1035 (C.D. Cal. 1998) ............................................................... 20, 21

*Jensen v. Hewlett-Packard Co.*,
14 Cal. App. 4th 958 (1993) .............................................................................. 14, 16

*Kianpour v. Wells Fargo Bank, N.A.*,
2017 WL 8292775 (C.D. Cal. May 30, 2017) .......................................................... 16

*Mann v. Quality Old Time Service, Inc.*,
120 Cal. App. 4th 90 (2004) .......................................................................... 20, 21, 22

*Nestlé USA, Inc. v. Crest Foods, Inc.*,
2019 WL 2619635 (C.D. Cal. Mar. 8, 2019) ........................................................... 19

*Nexsales Corp. v. Salebuild, Inc.*,
2012 WL 216260 (N.D. Cal. Jan. 24, 2012) ............................................................ 24

*Pak's Trading Europe B.V. v. Target*,
2018 WL 8333362 (C.D. Cal. July 5, 2018) ............................................................ 10

*Polygram Records, Inc. v. Superior Court*,
170 Cal. App. 3d 543 (1985) .......................................................................... 14, 15, 16

- iii -

*Premier Tracks, LLC v. Fox Broadcasting Co.*,
  2012 WL 13012714 (C.D. Cal. Dec. 18, 2012) ................................................... 10

*Righthaven LLC v. Hoehn*,
  716 F.3d 1166 (9th Cir. 2013) ................................................................. 8, 9, 10

*Roe v. Allied Insurance*,
  2011 WL 13356239 (S.D. Cal. Oct. 24, 2011) .................................................... 18

*Royal Holdings Technologies v. FLIR Systems, Inc.*,
  2021 WL 945246 (C.D. Cal. Jan. 8, 2021) ........................................................ 22

*Rumble, Inc. v. Daily Mail & General Trust PLC*,
  459 F. Supp. 3d 1294 (C.D. Cal. 2020) ........................................................ 19, 20

*Soil Retention Products, Inc. v. Brentwood Industries, Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021) ......................................................... 24, 25

*Starbuzz Tobacco, Inc. v. Abdallah*,
  2011 WL 13214313 (C.D. Cal. Nov. 2, 2011) .............................................. 14, 15, 16

*Swipe & Bite, Inc. v. Chow*,
  147 F. Supp. 3d 924 (N.D. Cal. 2015) ............................................................. 23

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ...................................................................... 8

*Synopsys, Inc. v. ATopTech, Inc.*,
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ..................................................... 12

*Tarantino v. Gawker Media, LLC*,
  2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) (Walter, J.) ..................................... 13

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ............................................................................. 14

*Thumbtack, Inc. v. Liaison, Inc.*,
  2024 WL 235172 (N.D. Cal. Jan. 22, 2024) ..................................................... 12

*Tresóna Multimedia, LLC v. Burbank High School Vocal Music
  Association*,
  953 F.3d 638 (9th Cir. 2020) ....................................................................... 8

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
  679 F. Supp. 2d 1120 (C.D. Cal. 2009) ........................................................... 18

*Williams v. Salvation Army*,
  2014 WL 6879936 (C.D. Cal. Dec. 4, 2014)..................................................17, 18

*Wixen v. Pandora Media, Inc.*,
  No. 2:19-cv-05278, Order Granting Mot. to Dismiss (C.D. Cal. July
  7, 2020) .........................................................................................................*passim*

*Wixen v. Triller, Inc.*,
  No. 2:20-cv-10515, Order Granting Mot. to Dismiss (C.D. Cal.
  Feb. 24, 2021) ...................................................................................8, 9, 10, 11

*Young Hollywood LLC v. White Ops, Inc.*,
  2020 WL 6162795 (C.D. Cal. Aug. 6, 2020) ................................................ 14, 16

**Statutes**

17 U.S.C. § 106................................................................................................*passim*

17 U.S.C. § 501(b) ...................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 8.................................................................................................... 12

Fed. R. Civ. P. 9(g) ........................................................................................... 20, 22

Fed. R. Civ. P. 12(b)(6) ............................................................................................7

Local Rule 7.3...................................................................................................*passim*

## **INTRODUCTION**

This case arises from a failed license renewal—and the routine wind-down period that followed. Plaintiff Wixen Music Publishing, Inc. is a publishing administrator that purportedly aggregates and licenses a catalog of musical works on behalf of its clients. FAC ¶¶ 12-13. For several years, Wixen licensed that catalog to Meta under agreements governing the use of music across Meta's services. When the parties were unable to reach agreement on renewal terms, that license terminated.

Rather than accept the commercial consequences of that failed negotiation, Wixen filed this lawsuit, seeking to transform a routine licensing dispute into a sweeping copyright and tort dispute involving 681 asserted works and more than $102 million in claimed statutory damages. Wixen alleges, on the one hand, that Meta acted wrongfully by removing certain works too early (*i.e.*, pre-termination)—purportedly harming Wixen's client relationships. At the same time, it alleges that Meta acted unlawfully by failing to remove works quickly enough after the license terminated. These inconsistent theories reflect how this case is not about any actual misconduct, but about dissatisfaction with the result of a failed business negotiation. Wixen's FAC is plagued by deficiencies as a result.

Those deficiencies begin with standing. Wixen alleges only that it "administers" works owned by others and is the "exclusive licensee and/or owner" of a music catalog. FAC ¶¶ 5, 12-13. Courts in this District have repeatedly rejected that perfunctory allegation by Wixen as insufficient to establish standing. Although Meta expressly raised this standing defect during the parties' L.R. 7-3 conference, Wixen's amended pleading does not identify any Work it owns, any exclusive right it purportedly holds, or any agreement conferring such rights, even as it *doubled* the number of asserted Works. That defect is particularly acute as to the pre-1978 Works referenced in the FAC, as to which an exclusive licensee may not pursue infringement claims on its own.

Even if Wixen could eventually establish standing, its direct infringement

claim independently fails as to the vast majority of the Works at issue. Despite doubling the scope of the case from 331 to 681 asserted Works, Wixen still relies on the same two examples from the original complaint ("*Light My Fire*" and "*Mr. Roboto*") and the same small set of undated screenshots that Wixen claims show that certain tracks were searchable at some unspecified point. FAC ¶¶ 20-21, Ex. B. Yet for 652 Works—the vast majority of asserted Works, including each of the newly added Works—the FAC alleges no facts *at all*. That is dispositive as to those Works.

The contributory infringement claim fares no better. As this Court has repeatedly recognized, contributory liability requires a predicate act of infringement by a third party. Yet even after amending its pleading, Wixen musters only a *single* Work that was allegedly used by a third-party post-termination ("*Mr. Roboto*"). FAC ¶ 21. Aside from that solitary example, the FAC relies on mere speculation that "thousands of reels" must exist. *Id.* ¶ 48. That is insufficient as a matter of law.

The state-law claims reflect similar overreach. Each is premised on a handful of context-free allegations about routine communications concerning licensing status and ownership disputes that are commonplace in the music industry. Wixen's defamation claim fails because—especially when evaluated from the standpoint of music-industry participants navigating a licensing dispute—the alleged statements concern entirely ordinary rights-management issues, are not reasonably susceptible to defamatory meaning, and are not false.

The trade libel claim fails for similar reasons. The alleged statements do not plausibly constitute actionable disparagement because none disparage the quality of Wixen's services. Wixen has also not plausibly alleged special damages with the specificity required for a trade libel claim. And the tortious interference claim fails because, even after materially expanding the FAC, Wixen still does not identify any actual contract allegedly interfered with, let alone plausibly allege Meta's knowledge of or intent to interfere with any such agreement.

In short, the FAC attempts to leverage a failed license negotiation into sweeping liability across copyright and tort—but fails to allege the threshold facts required to proceed. The Court should dismiss the FAC in its entirety.

## BACKGROUND

Meta Platforms, Inc., formerly known as Facebook, Inc., owns and operates Facebook, Instagram, and WhatsApp—three of the most widely used digital platforms in the world—with billions of active users who create, share, and consume content across them. FAC ¶¶ 2, 14-15, 18. Among many features available to them, Facebook and Instagram users can "create, share, and watch videos." *Id.* ¶ 15. They can also add photos, videos, text, and music to their "posts," "stories" (content that disappears after 24 hours), and "reels" (short videos that generally last 5-60 seconds). *Id.* WhatsApp users can also upload a photo or video to their "status," and "search for and select a music clip" to "accompany" it. *Id.* ¶ 16.

Meta maintains a "Music Library" from which users can select and incorporate music into their videos. *Id.* ¶ 2. The sound recordings are sourced directly from record labels and music distributors under licenses in which the providers grant Meta all rights necessary to offer the content to Meta's users. *Id.* ¶ 23. Meta's online "Help Centers" reinforce to users that "Meta is obligated to uphold our agreements with the rights holders of the music that's available in our licensed music library," and that "[t]hese agreements are designed to protect artists, songwriters, and their works." *Id.*

### A.    The Wixen-Meta License And Its Termination

A serial litigant, Wixen is a "publishing administrator" that claims to "administer[]" more than 100,000 songs written and/or owned by its clients. FAC ¶¶ 12-13. The FAC does not identify which, if any, of those works Wixen owns, nor does it allege—on a Work-by-Work basis—what exclusive rights Wixen purportedly holds. *Id.* It instead describes its role in terms of administering, licensing, and managing rights "on behalf of" others. *Id.* ¶ 5. Wixen's FAC identifies 681 "Works" in its Exhibit A. But even as it more than doubled the number of asserted Works (up

- 3 -

from 331 in the original Complaint), the FAC still does not distinguish among the Works Wixen allegedly owns, the rights Wixen allegedly holds, or the basis on which Wixen claims authority to sue as to any particular Work. Nor does it attach, quote from, or describe any agreement conferring exclusive rights in any specific Work.

Meta's relationship with Wixen dates back to approximately March 2018, when Wixen began licensing the catalog it administers to Meta through a series of agreements and amendments (collectively, the "Wixen-Meta License"). *Id*. ¶ 24. For several years, the Wixen-Meta License governed the use of Wixen's catalog on Meta's services. *Id*. In March 2025, with the latest iteration of the Wixen-Meta License soon up for renewal, Meta proposed updated licensing rates to reflect prevailing market conditions. Wixen declined, and the license terminated as of December 10, 2025. *Id*. ¶¶ 25-26. The Complaint arises from that failed renewal and the brief transition period shortly before and after the license expired.

### B. Meta's Pre-Termination Communications With Stakeholders

Wixen alleges that "[i]n or around late October 2025," while the Meta-Wixen License was still in effect, Meta "began removing the music of certain Wixen clients" from Meta's services. *Id*. ¶ 30. Wixen does not allege that the removal of any music breached the Meta-Wixen License, yet it characterizes this removal as a deliberate effort to "damage Wixen's relations with its clients," and alleges that "a number of Wixen's clients contacted Wixen to inquire why their music had been removed." *Id*. According to the FAC, Meta directed rightsholders to resolve ownership disputes with Wixen and then updated its records following resolution. *Id*. ¶ 38.

The FAC then recounts a series of alleged communications between Meta and various unnamed managers, publishers, and attorneys allegedly affiliated with Wixen's former clients. *Id*. ¶¶ 33-43. As Wixen itself acknowledges, the alleged communications arose during a period of licensing uncertainty in the Fall of 2025, and concern whether Wixen or successor publishers were properly claiming rights to certain works, whether relinquishment procedures had been completed, and what

- 4 -

information Meta needed to update its internal systems. The FAC alleges that Meta directed publishers and rightsholders to resolve ownership and relinquishment issues directly with Wixen and to provide updated catalog information through ordinary-course data-exchange processes. *Id*. ¶¶ 31, 38, 40.

The FAC alleges that Meta communicated to these various stakeholders that particular music remained unavailable because of "ownership claims," unresolved relinquishment issues, or the need for Wixen to submit additional materials through Meta's standard processes. *Id*. ¶¶ 31, 35, 38, 40, 43. For example, the FAC quotes a November 24, 2025 email from a Meta employee, which responded to an inquiry from an unidentified "Management Company" and explained that "publishers must resolve their ownership conflicts and disputes directly with each other," that Wixen would need to deliver relinquishment information "as per our standard data delivery processes," and that Meta had "reminded Wixen of this process." *Id*. ¶ 38.

The FAC repeatedly attempts to characterize these ordinary-course communications as part of some "pressure campaign." *Id.* ¶¶ 32, 40, 45, 50. But the allegations themselves describe benign communications concerning typical issues that accompany the wind-down of a large-scale music licensing relationship. To be sure, the FAC alleges that some of the recipients of these communications drew negative conclusions about Wixen's competence and its administration practices. *Id*. ¶¶ 34, 36, 41-45. But even the vague and context-free snippets quoted in the FAC depict Meta personnel going about their jobs by responding to questions about ownership disputes, relinquishment status, and any next steps needed to restore music to Meta's services. None of that constitutes a plausible attempt to defame or disparage Wixen. *Id*. ¶¶ 31-43.

The FAC further alleges that Meta "interfere[d]" with certain unidentified contracts with certain unidentified Wixen clients. *Id*. ¶¶ 98-103. But it still identifies no contract, no contract terms, no obligation that was supposedly disrupted, and no facts plausibly showing Meta's knowledge of or intent to interfere with any specific

agreement. *Id.* And while the FAC conclusorily alleges that Meta's conduct "prevented Wixen's performance or made Wixen's performance more expensive or difficult," it still does not plausibly allege that Meta caused any actual breach, disruption, or impairment of any contractual relationship. *Id.* ¶ 100.

### C.    The Alleged Post-Termination Infringement

Wixen alleges that after the Wixen-Meta License expired on December 10, 2025, Meta directly infringed its copyrights by reproducing, distributing, creating derivative works, and publicly performing the Works on Meta's unspecified "Apps." *Id.* ¶¶ 46-49, 58, 60. Yet even after amending its pleading to dramatically expand the scope of its infringement claims, the FAC still does not even attempt to allege a single instance of purported infringement for *652 of the 681* asserted Works. That is, for the overwhelming majority of the Works at issue—including all 350 of the newly added Works—the FAC alleges no facts regarding where any such Work appeared, when any alleged post-termination use occurred, what infringing conduct supposedly took place, or how Meta allegedly infringed any particular Work. Nor does the FAC identify which service—Facebook, Instagram, or WhatsApp—is tied to the alleged acts of infringement. *Id.* ¶¶ 2, 24. Remarkably, despite expanding the number of Works at issue by the hundreds, the FAC still relies on the exact same, limited set of screenshots and illustrative examples from its original pleading. *Id.* ¶¶ 20-21, Exs. A-B.

Wixen also asserts a theory of contributory infringement. *Id.* ¶¶ 68-71. While the FAC alleges that certain Works remained searchable in the Music Library after December 10, 2025, *see id.* ¶¶ 46-49, it provides only one example of purported contributory infringement: a solitary screenshot relating to a search for the song "*Mr. Roboto.*" FAC ¶ 21. Beyond that, the FAC does not identify a single user, a single reel, or a single act of copying, synchronization, or distribution by any user after the license terminated. Instead, it relies on generalized assertions that users "have made unauthorized reproductions" because certain tracks remained searchable at some

- 6 -

unspecified point in time. *Id.* ¶¶ 20-21, 69; Exs. A-B. From that flimsy basis, the FAC relies on the generalized allegation, notably made "*on information and belief*," that "thousands of reels" must incorporate the Works because certain tracks allegedly remained searchable. *Id.* ¶ 48 (emphasis added). Nor does Wixen allege that it ever submitted DMCA-compliant takedown notices to Meta. Nonetheless, based on these bare allegations, Wixen seeks more than $102 million in statutory damages for alleged willful infringement.

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," there is no plausible claim for relief. *Id.* at 679. Merely reciting legal conclusions is not enough, as courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court should not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *BWP Media USA, Inc. v. Linkbucks.com, LLC*, 2014 WL 12596429, at *2 (C.D. Cal. Aug. 8, 2014) (Walter, J.). Dismissal can be based on either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## ARGUMENT

### I.    WIXEN'S COPYRIGHT CLAIMS FAIL FOR LACK OF STANDING

#### A.    Wixen Has Not Plausibly Alleged That It Holds The Exclusive Rights Needed To Bring Its Copyright Claims

Wixen's copyright infringement claims fail at the outset because it has not plausibly alleged that it holds the exclusive rights needed to sue under the Copyright Act. Copyright standing is strictly limited: only "[t]he legal or beneficial owner of an

- 7 -

exclusive right under a copyright" may bring an infringement claim. 17 U.S.C. § 501(b). A plaintiff must therefore allege that it owns—or exclusively licenses—at least one of the enumerated rights in Section 106. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013).

The Ninth Circuit has likewise held that a party claiming rights derived from a copyright co-owner lacked standing where it could not establish that it holds an *exclusive* right under the Copyright Act. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1145 (9th Cir. 2008). The court explained that, because a co-owner "may not limit the other co-owners' independent rights to exploit the copyright," any purported transfer that does not convey exclusivity as against all co-owners amounts at most to a nonexclusive license—and a nonexclusive licensee "lacks standing to bring … copyright infringement claims." *Id.* at 1146. More recently, the Ninth Circuit in *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n* held that a licensing company lacked standing to pursue copyright infringement claims where it acquired rights from only certain co-owners. 953 F.3d 638, 645-46 (9th Cir. 2020).

Applying these principles, courts in this District have repeatedly rejected Wixen's pleadings on standing grounds. In *Wixen v. Pandora Media, Inc.*, Judge Wilson was "unable to plausibly infer [Wixen's] standing from the complaint" because Wixen pleaded only that it "administers" a catalog of songs "written and/or owned" by its clients. Order Granting Mot. to Dismiss, No. 2:19-cv-05278 (C.D. Cal. July 7, 2020), Dkt. No. 68 ("*Pandora*"); *see also* Calvanico Decl. Ex. A. Similarly, in *Wixen v. Triller, Inc.*, the court dismissed Wixen's complaint where it alleged that it was the "exclusive licensee and/or owner" of the works—a formulation the court agreed was "conclusory and even contradictory" of allegations that the "songwriters themselves own the songs." Order Granting Mot. to Dismiss, No. 2:20-cv-10515 (C.D. Cal. Feb. 24, 2021) Dkt. No. 33 ("*Triller*"); *see also* Calvanico Decl. Exs. B, D.

The FAC suffers from these same defects. Although Meta raised standing as a threshold issue with Wixen's original complaint, Wixen chose to double down: even as it now asserts infringement as to 681 Works, it still does not identify any Work it owns, any exclusive right it purportedly holds, or any agreement conferring such rights. Instead, the FAC repeats the same formulation that Wixen is the "exclusive licensee and/or owner" of the Works (FAC ¶ 5)—the very same "conclusory" and "contradictory" allegation previously rejected by other courts in this District.

The FAC alleges only that Wixen "administers more than 100,000 songs written and/or owned by its more than 2,000 clients." *Id.* ¶ 12. It also repeatedly makes the conclusory assertion that Wixen is the "exclusive licensee and/or owner" of the Works. *Id*. ¶¶ 5, 13, 56, 67. That hedged formulation—made without reference to any particular Work or right—does not plausibly allege standing. "[M]erely calling" oneself the "exclusive licensee" or "copyright owner" of a Work "does not make it so." *Righthaven*, 716 F.3d at 1168, 1170. A complaint must instead plead *facts* showing that the plaintiff holds an exclusive § 106 right. *Iqbal*, 556 U.S. at 678.

The FAC still does not do so. It does not identify a single asserted Work that Wixen itself owns. Nor does it allege that Wixen holds any exclusive right under § 106 as to any particular Work. Instead, it describes a series of administrative functions performed "*on behalf of*" copyright owners, including licensing, royalty collection, and rights management. FAC ¶ 5. Those allegations reinforce that Wixen acts as an intermediary for rights holders; they do not establish that Wixen itself holds any exclusive § 106 rights. *See Righthaven*, 716 F.3d at 1169.

Wixen's conclusory statement that it is alternatively an "exclusive licensee" with the ability to "assert rights on behalf of each copyright owner," *see* FAC ¶ 5, fares no better. This allegation merely mirrors what Wixen pleaded in its original complaint in *Triller*, *see* Calvanico Decl. Ex. D ¶¶ 3, 13, which the court dismissed for lack of standing. *See* Calvanico Decl. Ex. B. As in *Triller*, the FAC neither attaches nor describes any agreement conferring exclusive rights in any Work. Nor

- 9 -

does it identify which exclusive rights were purportedly transferred, by whom, or for which specific Works. That's not enough: courts must look "not just at the labels [contracting] parties use but also at the substance and effect of the contract." *Righthaven*, 716 F.3d at 1169-70. That is why Wixen's initial complaint in *Triller* (*see* Calvanico Decl. Ex. D) was found deficient; the FAC here merely recycles the same theory of standing without supplying the actual factual allegations needed to proceed in the Ninth Circuit. *See Pak's Trading Eur. B.V. v. Target*, 2018 WL 8333362, at *7 (C.D. Cal. July 5, 2018); *Premier Tracks, LLC v. Fox Broad. Co.*, 2012 WL 13012714, at *6 (C.D. Cal. Dec. 18, 2012). Because the FAC still fails to allege that Wixen is the legal or beneficial owner of any exclusive right in any identified Work, its copyright claims fail at the threshold.

### B.   Wixen Fails To Plead Standing As To Pre-1978 Works

The FAC leaves the Court unable to determine which Copyright Act even governs the asserted Works, which influences the requirements for standing. Wixen asserts infringement of 681 Works. Exhibit A includes copyright dates for each— including scores that predate January 1, 1978. *See* FAC Ex. A. But the FAC nowhere distinguishes between pre- and post-1978 Works or alleges what rights Wixen holds as to any of the pre-1978 Works.

That omission "is not a mere matter of form." *Pandora*, Dkt. No. 68, Calvanico Decl. Ex. A, at 2. Works created before January 1, 1978 may be governed, in whole or in part, by the Copyright Act of 1909, while later works are governed by the Copyright Act of 1976. *See Dolman v. Agee*, 157 F.3d 708, 712 n.1 (9th Cir. 1998). Under the 1909 Act, copyright interests were traditionally treated as indivisible, such that an exclusive licensee "may not alone maintain an infringement action" without joining the "copyright owner." *Cable Vision, Inc. v. KUTV, Inc.*, 335 F.2d 348, 354 (9th Cir. 1964); *see also Triller*, Dkt. No. 33, Calvanico Decl. Ex. B, at 7-8 (collecting cases). Whether that rule applies to any particular Work depends on facts not pleaded here.

This deficiency has plagued Wixen before. Indeed, it led to dismissal in *Triller*, where the court could not determine "from the face of the Complaint … which works [were] governed by which Act," and therefore could not assess whether Wixen had standing to sue. *See Triller*, Dkt. No. 33, Calvanico Decl. Ex. B, at 9. Likewise, in *Pandora*, the court identified "significant infirmities" arising from Wixen's inclusion of pre-1978 works without adequate allegations regarding ownership and rights. *See Pandora*, Dkt. No. 68, Calvanico Decl. Ex. A, at 2. Wixen responded to that dismissal order by limiting its claims in its Second Amended Complaint to post-1978 works. *See Pandora*, Dkt. No. 74, Calvanico Decl. Ex. C, at ¶ 2.

The FAC is similarly deficient: although it lists a "copyright date" for each asserted Work, the FAC lumps the Works together and asserts infringement without distinguishing among them or joining any copyright owners. The Court thus cannot determine whether Wixen has standing to sue as to any identifiable group of Works.

## II.    WIXEN FAILS TO ADEQUATELY ALLEGE DIRECT COPYRIGHT INFRINGEMENT AS TO 652 OF THE WORKS AT ISSUE

Wixen's direct infringement claim independently fails as to 652 Works—the overwhelming number of asserted Works. To state a claim, Wixen must allege facts showing, as to each asserted Work, that Meta violated one or more of its exclusive rights under § 106 with respect to specific works, through identifiable acts, at particular times. Wixen still has not done so.

Even after amendment, Wixen continues to rely on the same two types of allegations it originally rested on: (i) an unadorned list of (now) 681 Works in Exhibit A that Wixen claims to "administer"; and (ii) the same 29 screenshots from the original pleading that purportedly show certain tracks were searchable at unspecified points in time post-termination. *See* FAC ¶¶ 20-22, 48, Exs. A-B. But for 652 of the 681 Works—*more than 95% of the Works now at issue*—Wixen alleges *nothing at all*. It offers no facts about *where* any such Work appeared; *when* it was allegedly used post-termination; *how* it was reproduced, distributed, or publicly performed; or

- 11 -

*what* Meta did to infringe it.

That is not sufficient. Courts in this Circuit routinely dismiss copyright claims where the plaintiff fails to allege the basic factual underpinnings of the alleged infringement. *See*, *e.g.*, *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing where allegations did not permit the court to "meaningfully evaluate the plausibility" of infringement); *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (rejecting speculation about widespread copying without identifying infringing acts or works); *Thumbtack, Inc. v. Liaison, Inc.*, 2024 WL 235172, at *2 (N.D. Cal. Jan. 22, 2024) (requiring plaintiffs to "identify actionable copying with specificity under Rule 8").

At most, the FAC alleges, in general and conclusory terms, that Meta "reproduced" each of the Works and/or "made [them] accessible" to its users in its "music libraries and its promotional materials." FAC ¶¶ 58, 60. *Twombly* and *Iqbal*, however, reject "formulaic recitation[s] of the elements." Rather than answer the basic questions necessary to state a claim on a Work-by-Work basis—*i.e.*, the who, what, when, where, and how of the alleged infringement—the FAC instead relies only on a bare list of Works and a limited set of screenshots. Beyond those narrow screenshots, though, the FAC contains no identifying information concerning the allegedly infringing content, when any alleged infringement occurred, or what act by Meta supposedly violated any exclusive right under § 106. A lengthy list of Works coupled with speculation is no substitute for well-pleaded facts. *Synopsys*, 2013 WL 5770542, at *4.

## III.   WIXEN FAILS TO ADEQUATELY ALLEGE CONTRIBUTORY INFRINGEMENT

Contributory copyright liability requires a predicate act of direct infringement by a third party. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party"). As this Court has recognized,

- 12 -

contributory liability requires a plausible allegation of direct infringement by a third party, because "secondary liability cannot exist in the absence of direct infringement by a third party." *Tarantino v. Gawker Media, LLC*, 2014 WL 2434647, at \*3 (C.D. Cal. Apr. 22, 2014) (Walter, J.). The FAC does not satisfy this threshold requirement as it fails to identify any predicate act of direct infringement by a third party. The contributory infringement claim should thus be dismissed.

The FAC provides all of one example in which one of the 681 Works at issue was allegedly used in a reel after the December 10, 2025 license termination date ("*Mr. Roboto*"). FAC ¶ 21. Beyond that—and despite expanding the case from 331 to 681 asserted Works—the FAC still relies on the same screenshots of Music Library search results and still asserts in broad strokes that "thousands of reels" must incorporate the Works. *Id.* ¶¶ 17, 20-21, 48, 69; Ex. B. Those allegations do not plausibly allege third-party infringement.

This Court has repeatedly dismissed secondary liability claims for precisely this deficiency. In *Tarantino*, for example, this Court rejected a contributory infringement claim where the plaintiff "merely speculate[d] that some direct infringement must have taken place" without specifying "the identity of a single third-party infringer, the date, the time, or the details of a single instance of third-party infringement." 2014 WL 2434647, at \*4. Likewise, in *BWP Media USA, Inc.*, this Court dismissed all secondary liability claims because the plaintiff "failed to allege the identity of a single third-party infringer, the date, the time, or the details of a single instance of third-party infringement, or, more importantly, how Defendant allegedly caused, induced, or materially contributed to the infringement by those third parties." 2014 WL 12596429, at \*3. Wixen's pleading is even thinner: the FAC provides all of one example of user-generated content, and relies on the mere possibility that infringement may have occurred based on searchability alone. That is insufficient to plausibly plead a predicate act of third-party infringement, and without such an allegation, the contributory infringement claim cannot proceed.

- 13 -

## IV.    WIXEN FAILS TO ADEQUATELY ALLEGE DEFAMATION

Under California law, a claim for defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Whether language is reasonably susceptible to defamatory meaning is a threshold question of law for the Court to resolve by examining the words in context and from the standpoint of the intended audience. *See Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 261 (1986). Courts evaluating defamatory meaning are to consider the full context, including "the occasion of the utterance, the persons addressed, the purpose to be served, and all of the circumstances attending the publication." *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970 (1993).

Here, the FAC alleges that the challenged communications were directed to sophisticated music-industry participants navigating an ongoing licensing and ownership dispute. *See* FAC ¶¶ 31-43. If the publication, so construed, cannot reasonably be understood as defamatory, dismissal is proper. *See*, *e.g.*, *Starbuzz Tobacco, Inc. v. Abdallah*, 2011 WL 13214313, at *4 (C.D. Cal. Nov. 2, 2011); *Polygram Recs., Inc. v. Super. Ct.*, 170 Cal. App. 3d 543, 551 (1985); *Young Hollywood LLC v. White Ops, Inc.*, 2020 WL 6162795, at *4-*5 (C.D. Cal. Aug. 6, 2020) (statements about website traffic quality did not "call into question Plaintiff's honesty, integrity or competence as required" to state defamation claim).

Wixen's defamation claim fails because each of the alleged statements concern ownership disputes, relinquishment procedures, and licensing status during the unwinding of the parties' music licensing relationship. Evaluated in context and from the standpoint of the recipients of the statements—sophisticated music-industry participants—the alleged statements are not reasonably susceptible of a defamatory meaning and are not plausibly alleged to be false.

- 14 -

## A.   The Alleged Statements Are Not Reasonably Susceptible Of A Defamatory Meaning

California courts distinguish between statements that impugn a plaintiff's honesty, integrity, or competence—which may be actionable as defamatory—and statements that merely describe business positions, product availability, or commercial disputes, which do not give rise to defamation liability absent an implication of dishonesty or other reprehensible traits. *See Polygram*, 170 Cal. App. 3d at 549-51 (defamation protects personal reputation, whereas criticisms of goods or services are not defamatory absent such implications); *Starbuzz Tobacco*, 2011 WL 13214313, at *3-*5 (C.D. Cal. Nov. 2, 2011) (dismissing defamation claim where statements about product lineage and quality did not reasonably imply wrongful conduct). Whether language is reasonably susceptible of a defamatory meaning must be evaluated in context and from the standpoint of the intended audience. *See Baker*, 42 Cal. 3d at 261 (1986).

Applying these principles here, the FAC itself demonstrates that the challenged statements—*e.g.*, that music "was removed … because of Wixen," that Meta could not "reinstate" tracks "until Wixen released its claims" or "resolved its 'issues' with Meta," or that a catalog was "currently unavailable … due [to] active ownership claims by Wixen Music Publishing"—are, on their face, routine communications concerning licensing status, music ownership disputes, and rights-management issues. FAC ¶¶ 31, 35, 43, 77.

Take, for example, the November 24, 2025 email from Meta employee Natalie Echols quoted at length in the FAC. *Id.* ¶ 38. As alleged, Ms. Echols responded to an inquiry from a management company regarding the status of certain music on Meta's platforms by explaining that "publishers must resolve their ownership conflicts and disputes directly with each other" and that relinquishment information must be submitted through Meta's "standard data delivery processes." *Id.* She also provided the relevant relinquishment template and guide. *Id.* It is, in short, an entirely ordinary

- 15 -

communication regarding rights-management procedures, and not a defamatory attack on Wixen's integrity or competence.

The FAC's various "Former Client" allegations offer more of the same. Although Wixen strains to portray these episodes as a coordinated "campaign of misinformation," *see* FAC ¶ 41, the alleged statements themselves concern anodyne operational issues concerning how to effectively relinquish ownership claims and restore music to Meta's platforms. *See id*. ¶¶ 31-43. Evaluated in context and from the standpoint of music industry participants, *see Jensen*, 14 Cal. App. 4th at 970, these statements are entirely ordinary: they do not accuse Wixen of dishonesty, fraud, or any reprehensible behavior, nor do they impugn Wixen's professional integrity or competence.

To the extent Wixen alleges that certain third parties drew negative conclusions about Wixen's administrative competence, *see* FAC ¶¶ 34-36, those conclusions did not stem from any defamatory meaning conveyed by the statements. Nor could they. By the FAC's own telling, Meta personnel were simply responding to incoming inquiries, providing relinquishment templates, and directing industry stakeholders to "reach out" to Wixen to resolve ownership and administration questions. *See* FAC ¶¶ 31, 38, 40. Tellingly, the FAC offers only isolated snippets of the communications, stripped of the surrounding correspondence and context. *Id.* ¶¶ 31-43. Because each alleged statement falls on the non-defamatory side of the line drawn by California courts, the claim should be dismissed. *See Polygram*, 170 Cal. App. 3d at 549-51; *Starbuzz*, 2011 WL 13214313, at *3-*5; *Young Hollywood*, 2020 WL 6162795, at *4-*5.

### B.    Wixen Fails To Adequately Plead Falsity

The defamation claim also fails because the FAC still does not plausibly allege falsity. "An essential element of defamation is that the publication in question must contain a false statement of fact." *Kianpour v. Wells Fargo Bank, N.A.*, 2017 WL 8292775, at *5 (C.D. Cal. May 30, 2017) (quoting *Gill v. Hughes*, 227 Cal. App. 3d

- 16 -

1299, 1309 (1991)). Whether a statement is "reasonably susceptible of an interpretation which implies a provably false assertion of fact—the dispositive question in a defamation action—is a question of law for the court." *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995).

Here, the FAC itself confirms the existence of the ownership, relinquishment, licensing, and administrative disputes reflected in the challenged communications. Wixen alleges at length that the parties disagreed about relinquishment procedures and the steps required to restore music to Meta's platforms. FAC ¶¶ 33-43. Indeed, the FAC repeatedly characterizes Meta's relinquishment procedures as "new, onerous, and flawed," while simultaneously acknowledging that Meta insisted those procedures be followed before certain catalogs could be reinstated. *Id*. ¶ 40. The FAC likewise confirms that the parties' license negotiations "broke down" and that the license "was not renewed" after Wixen declined Meta's proposed rates. FAC ¶¶ 3, 28. Against that backdrop, statements that Meta "was unable to renew its agreement with Wixen," *id*. ¶ 31, that certain music remained unavailable due to "active ownership claims," *id*. ¶ 43, that publishers needed to "resolve" issues directly with Wixen, *id*. ¶¶ 31, 38, or that additional relinquishment materials or forms were required, *id*. ¶¶ 35, 38, merely reflect Meta's neutral description of an ongoing rights-administration dispute. The FAC does not plausibly allege that such statements were objectively false. *See Williams v. Salvation Army*, 2014 WL 6879936, at *2 (C.D. Cal. Dec. 4, 2014) (dismissing defamation claim where plaintiff's own allegations confirmed the truth of the challenged statement and thus defeated falsity).

Nor can the FAC transform these operational disputes into actionable falsehoods by simply alleging that Meta "knew" certain rights had been relinquished or that Meta's relinquishment procedures were unnecessary, "new," or pretextual. *See* FAC ¶¶ 33, 40, 43-45. At most, these allegations reflect a difference of opinion on ownership and relinquishment, *see id*. ¶ 43 (referencing Meta's alleged statement that a catalog was "currently unavailable … due [to] active ownership claims by

- 17 -

Wixen Music Publishing"), and not a false statement of fact. *See*, *e.g.*, *Roe v. Allied Ins.*, 2011 WL 13356239, at *3 (S.D. Cal. Oct. 24, 2011) (dismissing defamation claim where defendants' communications led third parties to believe plaintiffs were under investigation for insurance fraud, but the defendants "were, in fact, investigating [p]laintiffs for insurance fraud," and plaintiffs accordingly "failed to identify any false statement"). Where, as here, a plaintiff's own allegations confirm the substance of the challenged statements, falsity is not plausibly alleged, and the defamation claim fails as a matter of law. *See Williams*, 2014 WL 6879936, at *2.

## V.   WIXEN FAILS TO ADEQUATELY ALLEGE TRADE LIBEL

Under California law, "trade libel is an intentional disparagement of the quality of property, which results in pecuniary damage." *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998) (citations omitted). A plaintiff must plead: "(1) a statement that (2) was false, (3) disparaging, (4) published to others in writing, (5) induced others not to deal with it, and (6) caused special damages." *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 679 F. Supp. 2d 1120, 1140 (C.D. Cal. 2009). Even after amendment, Wixen does not plausibly allege either clearly disparaging statements or cognizable special damages.

### A.   The FAC Fails To Plead Disparaging Statements

California courts narrowly construe the elements of trade libel. Were it otherwise, ordinary commercial disputes would inevitably descend into "'vexatious lawsuits' over perceived slights" between competitors. *Hartford Cas. Ins. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 293 (2014). To avoid that outcome, a plaintiff can only satisfy the "disparaging" element by alleging "a false or misleading statement that . . . *clearly derogates* [plaintiff's] product or business." *Id*. at 284 (emphasis added). Disparagement "requires more than a statement that may conceivably or plausibly be construed as derogatory." *Id*. at 295. The inference must be "clear or necessary." *Id*.

The FAC does not come close to satisfying this standard. As discussed above, the challenged communications concern catalog availability, relinquishment

- 18 -

procedures, and the administrative steps required to restore music to Meta's platforms. Specifically, Wixen points to alleged statements that certain music remained unavailable due to "active ownership claims," that publishers needed to "resolve" ownership disputes directly with Wixen, and that additional relinquishment materials or forms were required before catalogs could be reinstated pursuant to Meta's "standard data delivery processes." FAC ¶¶ 31, 35, 38, 43. None of these statements "clearly derogate" the quality of Wixen's publishing administration services. None accuse Wixen of dishonesty, fraud, incompetence, or misconduct. Nor do they otherwise convey the type of derogatory implication required for trade libel liability, despite Wixen's conclusory assertion that they supposedly "disparaged the quality of Wixen's services." *Id.* ¶ 88. At most, the statements reflect Meta's understanding of unresolved relinquishment issues during a commercial dispute.

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, 459 F. Supp. 3d 1294 (C.D. Cal. 2020), is particularly instructive. In *Rumble*, the court dismissed a trade libel claim based on the statement: "Unfortunately, we don't work with Rumble. It's the only agency we don't work with." *Id.* at 1297. The court held that this "innocuous statement" was not clearly disparaging and did not carry a "clear or necessary" derogatory meaning about Rumble's services. *Id.* at 1300-01. Other courts have consistently reached the same result when considering similarly innocuous statements. *See Nestlé USA, Inc. v. Crest Foods, Inc.*, 2019 WL 2619635, at *9 (C.D. Cal. Mar. 8, 2019) (dismissing trade libel claim where alleged communications "presented subtle, implied comments that were not clearly disparaging"); *Films of Distinction*, 12 F. Supp. 2d at 1081 n.8 ("In the Ninth Circuit, a product defamation or trade libel claim must be based on specific statements, and '(t)he defamatory character of the language must be apparent from the words themselves.'").

Wixen's trade libel allegations similarly flunk the "clear or necessary" standard. Stating that content is unavailable due to an "active ownership claim," FAC ¶ 38, is simply a factual description of a rights dispute—akin to "we don't work with

- 19 -

Rumble," which the *Rumble* court held was not derogatory. *Rumble*, 459 F. Supp. 3d at 1297. A sophisticated industry audience would understand these statements as an innocuous description of an ongoing licensing dispute—not as commentary about the quality of Wixen's services. To hold otherwise would transform every contentious licensing negotiation into "vexatious" trade libel litigation, which the California Supreme Court sought to prevent in *Hartford*. *See* 59 Cal. 4th at 293.

### B. Wixen Fails To Plead Special Damages With Particularity

Even if the FAC adequately alleged disparaging statements, the trade libel claim independently fails because Wixen still does not plead special damages with the particularity required under California law and Federal Rule of Civil Procedure 9(g). "Under federal pleading requirements, '[w]hen items of special damages are claimed, they shall be specifically stated.'" *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) (*quoting* Fed. R. Civ. P. 9(g)). This is a "rigorous" standard, such that "bare allegation[s] of the amount of pecuniary loss" are insufficient, as are general allegations of lost profits or harm to reputation and goodwill. *Elec. Waveform Lab Inc. v. Work-Loss Data Inst., LLC*, 2015 WL 12684232, at *4 (C.D. Cal. Aug. 25, 2015); *see also Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964). Rather, a plaintiff must allege "facts showing an established business," the "amount of sales for a substantial period" preceding and subsequent to the publication, and that "such loss in sales were the natural and probable result of such publication." *Isuzu Motors*, 12 F. Supp. 2d at 1047.

To plead special damages, a plaintiff "may not rely on a general decline in business arising from the [alleged] falsehood, and must instead identify particular customers and transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014) (dismissing trade libel claim where plaintiffs generally alleged "lost

- 20 -

sales, market share, and customer goodwill" and sought $3 million in damages without specifying amounts attributable to the alleged libel, or any lost business).

The FAC's damages allegations are plainly insufficient. Although Meta identified this deficiency with Wixen's original pleading during the parties' Local Rule 7.3 conference, the FAC continues to rely on generalized allegations of reputational harm and speculative future business consequences. Wixen alleges, for example, that various managers, attorneys, publishers, and former clients supposedly developed negative views about Wixen's competence or administration practices, and that Wixen purportedly lost future opportunities to represent unidentified artists or catalogs. FAC ¶¶ 34, 36, 41-45, 89. From that speculative premise, Wixen seeks damages of "no less than $20,000,000." *Id.* ¶ 85.

Nor do the FAC's few allegations concerning purportedly lost business relationships cure the defect. Wixen alleges that certain unidentified "Former Clients" terminated their administration agreements early and that it lost an opportunity to represent "Potential Client 1." FAC ¶¶ 35, 37, 42. But the FAC still does not plead the value of any lost agreement, the amount of any lost revenue attributable to the statements, the duration of any affected business relationship, or any other facts plausibly showing that any alleged pecuniary loss flowed directly from the statements themselves—as opposed to Wixen's failure to renew its license with Meta, Wixen's own performance as an administrator, or some other unrelated business issues.

Moreover, Wixen alleges none of the concrete economic facts needed to plead special damages with particularity, such as pre- and post-publication revenues, objectively measurable declines in licensing income, or any specific lost transaction tied to a particular statement. *See Isuzu Motors*, 12 F. Supp. 2d at 1047; *Mann*, 120 Cal. App. 4th at 109. Even after Meta identified this fatal defect, the best that Wixen was able to muster to support its eye-popping damages demand is the conclusory assertion that the amount is supposedly "evidenced by a drop in revenue" and unspecified "other financial metrics." FAC ¶ 85. The FAC, however, never explains

- 21 -

what those "financial metrics" are, how any purported revenue "drop" was calculated, or how any alleged economic loss was caused by any allegedly disparaging statement. Such vague and unsupported allegations fall far short of what Rule 9(g) demands.

## VI. WIXEN FAILS TO ADEQUATELY ALLEGE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### A. Wixen Does Not Identify Any Specific Contract That Meta Allegedly Interfered With

To plead intentional interference with contractual relations under California law, a plaintiff must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). To state a plausible claim, Wixen must identify the contracts that Meta allegedly interfered with. *See id.* Yet even after Meta advised Wixen of this deficiency with its original pleading, Wixen made no attempt to cure it. The FAC did not make a single substantive edit to the cause of action, and *still* does not identify a single contract, name any client, or allege the terms, parties, or manner in which any contract was breached or disrupted. *See* FAC ¶¶ 98-103.

Those omissions are dispositive: by not identifying any specific contract, Wixen cannot plausibly allege that Meta knew of any such agreement or intentionally engaged in conduct directed at inducing a breach or disruption. *See*, *e.g.*, *Royal Holdings Techs. v. FLIR Sys.*, 2021 WL 945246, at *5 (C.D. Cal. Jan. 8, 2021) ("California law requires an intent to interfere with a *known* contract; and, therefore, a plaintiff must allege enough detail to demonstrate the requisite knowledge and intent.") (emphasis added); *Innovatel Servs. v. First Bridge Merch. Sols.*, 2021 WL 3415218, at *7 (C.D. Cal. Mar. 19, 2021) (dismissing intentional interference claim because plaintiff's "vague, conclusory allegations" that defendants "knew that

- 22 -

[plaintiff] had contracts with third parties" lacked the "detail required by California law and federal pleading standards").

Courts routinely dismiss claims pleaded at this level of generality. For example, in *Swipe & Bite, Inc. v. Chow*, the court dismissed an intentional interference claim where the plaintiff only alleged agreements with "contractors, vendors, employees, and customers" without facts showing plausible knowledge of any specific contract or contractual relationship. 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015). And in *7EDU Impact Acad. Inc. v. You*, allegations of disruption to "Client Agreements" and "Employee Agreements"—without identifying any particular contracts—were similarly deemed insufficient. 760 F. Supp. 3d 981, 1000 (N.D. Cal. 2024) (dismissing intentional interference claim because "allegations of 'generalized disruption of contracts'" were "insufficient to identify 'the particular contracts' that were interfered with," and collecting similar cases). Wixen's allegations are indistinguishable. Even after amendment, Wixen still identifies no specific contracts, and it therefore does not plausibly allege either Meta's knowledge of any agreement or conduct by Meta intentionally directed at interfering with one. *Compare* FAC ¶ 98 *with Swipe & Bite*, 147 F. Supp. 3d at 935 (dismissing intentional interference claim where plaintiff alleged contracts in general terms but failed to plead facts showing defendant's knowledge of any specific agreements).

Nor do the FAC's new "Former Client" allegations move the needle. For starters, Wixen never connects those allegations to the intentional interference claim. Indeed, several concern relationships that had *already ended before* the challenged conduct allegedly occurred in late 2025. Wixen's administration agreement with "Former Client 1" allegedly ended in 2024. FAC ¶ 33. And "Former Clients 4" allegedly "terminated their administration agreements with Wixen when they sold their catalog several years ago." *Id*. ¶ 43. Plainly, Meta cannot have "interfered" with relationships that did not even exist at the time.

The allegations concerning Former Clients 2 and 3 fare no better. The FAC

- 23 -

alleges that Former Client 2 "forced an early termination" of its agreement with Wixen, FAC ¶ 35, while separately alleging that *Wixen itself* "terminat[ed] its administration agreement with Former Client 3 early." *Id*. ¶ 37. Even taking those allegations as true, the FAC does not identify the contracts, the terms or obligations that were disrupted, or any knowing or intentional conduct by Meta aimed at inducing a breach of those agreements. *See*, *e.g.*, *Dongguan Beibei Toys Indus. Co. v. Underground Toys USA, LLC*, 2019 WL 8631502, at *2 (C.D. Cal. Dec. 16, 2019) (dismissing "conclusory" interference claim that did not "identify specific contracts that were disrupted, the terms of the contracts, the parties involved, and how [the defendant's] actions disrupted the contracts"); *Nexsales Corp. v. Salebuild, Inc.*, 2012 WL 216260, at *4 (N.D. Cal. Jan. 24, 2012) (dismissing where plaintiff alleged a third-party contract existed but not "the parties involved, the terms of the contract that were breached, [and] how Defendant would have known of the contract").

### B.      Wixen Fails To Adequately Allege Disruption Or Damages

The intentional interference claim also fails because Wixen does not plead facts showing an "actual breach or disruption of the contractual relationship" or "resulting damage." *Fresno Motors*, 771 F.3d at 1125. The FAC alleges only that Meta's conduct "prevented Wixen's performance or made [it] more expensive or difficult." FAC ¶ 100. That conclusory, disjunctive allegation—unsupported by any facts—is insufficient. In *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, the court dismissed an intentional interference claim where the plaintiff alleged only that performance was made "more expensive or difficult," without facts as to "how Plaintiff's business was interfere[d] with." 521 F. Supp. 3d 929, 960 (S.D. Cal. 2021).

This defect continues to plague the FAC. At most, the FAC alleges that a single unidentified former client "forced an early termination" of its agreement with Wixen. FAC ¶ 35 (referencing "Former Client 2"). But even accepting that allegation as true, the FAC still does not identify the contract at issue, plead any of its terms, identify what rights or obligations were supposedly lost, or allege facts plausibly showing that

- 24 -

any termination resulted from Meta's conduct. Nor does the FAC plead the amount of any resulting loss with any specificity. The allegations concerning "Former Client 3" are even weaker. As the FAC itself acknowledges, *Wixen* terminated the agreement early—not the client. *Id*. ¶ 37. If anything, that allegation undermines the inference that Meta induced a third party to breach or disrupt the agreement.

At bottom, the FAC still alleges no facts showing disruption to any contractual obligation that Wixen owed, no failed performance obligations, and no plausible nexus between Meta's alleged conduct and any induced breach. Instead, Wixen offers only the conclusory, hedged assertion that its performance was "prevented" or made "more expensive or difficult." FAC ¶ 100. This exact language was found insufficient in *Soil Retention*, 521 F. Supp. 3d at 960, and it should be rejected again here.

## CONCLUSION

For the above reasons, the Court should dismiss the FAC with prejudice.

- 25 -

Dated:  June 15, 2026

Respectfully submitted,

MAYER BROWN LLP

BY: */s/ Matthew D. Ingber*
     Matthew D. Ingber
     Allison Aviki
     Rory K. Schneider
     David Yolkut
     *mingber@mayerbrown.com*
     *aaviki@mayerbrown.com*
     *rschneider@mayerbrown.com*
     *dyolkut@mayerbrown.com*
     1221 Avenue of the Americas
     New York, NY 10020-1001
     Telephone: (212) 506-2500

     Michael D. Calvanico
     *mcalvanico@mayerbrown.com*
     333 S. Grand Ave., 47th Floor
     Los Angeles, CA 90071-1575
     Telephone: (213) 229-9500

Attorneys for Defendant
META PLATFORMS, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Meta Platforms, Inc., certifies that this brief does not exceed the 25-page limitation set by court order dated January 30, 2026.

Dated:  June 15, 2026                    MAYER BROWN LLP

By: */s/ Matthew D. Ingber*
    Matthew D. Ingber

Attorney for Defendant
META PLATFORMS, INC.

DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS WIXEN'S FAC,
CASE NO. 2:26-CV-00752-JFW-AS