ANDREW S. MACKAY, #197074
amackay@donahue.com
DANIEL J. SCHACHT, #259717
dschacht@donahue.com
PADMINI CHERUVU, #301292
pcheruvu@donahue.com
STEPHANIE L. GONZALEZ, #352905
sgonzalez@donahue.com
MEGAN C. CRONIN, #363603
mcronin@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile: (510) 451-1527

Attorneys for Plaintiff WIXEN MUSIC PUBLISHING, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WIXEN MUSIC PUBLISHING, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware corporation, and DOES 1 to 20,<br><br>Defendants. | Case No. 2:26-cv-00752-JFW-AS<br><br>**[PROPOSED] STATEMENT OF DECISION**<br><br>Hearing Date: November 23, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7A<br>Judge: Hon. John F. Walter |

Before this Court is Defendant META PLATFORMS, INC. ("Defendant") motion to dismiss Plaintiff WIXEN MUSIC PUBLISHING, INC.'S ("Plaintiff") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. After considering Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"), Plaintiff's Opposition, Defendant's Reply, and the argument of the parties, the Court rules as follows:

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

According to Plaintiff's Second Amended Complaint (Dkt 45, "SAC"), Plaintiff is a music publisher that was founded in 1978. Plaintiff administers more than 100,000 songs written and/or owned by its more than 2,000 clients. As a publishing administrator, Plaintiff is the exclusive licensee and/or owner of more than one hundred thousand musical compositions in its catalog, including the five hundred and sixty-nine (569) works listed in Exhibit 1 of the SAC (each a "Work" and collectively the "Works"). While the majority of its catalog is musical compositions, Plaintiff alleges it is also the administrator and exclusive licensee of certain sound recordings.

As alleged in the SAC, Defendant was formerly known as Facebook, Inc., and rebranded to Meta Platforms, Inc. in 2021. Defendant owns and operates two social media platforms, Instagram and Facebook, and a messaging application, WhatsApp, which are available to users on the internet or via mobile applications (together, the "Apps"). In or around 2020, Defendant launched "Instagram Reels" ("Reels"), which allows users to create, share, and watch videos. Within a year from its initial launch, Reels became available on Facebook as well. Reels provides users with the ability to easily add music to videos from the libraries of music that Defendant controls, maintains, and provides for its Apps (together, the "Music Library").

The SAC alleges that Plaintiff has previously licensed its catalog to Defendant for use in videos on its Apps, dating back to before the inception of Reels in 2020. Plaintiff and Defendant began renegotiating the extension of their last license (the "Wixen-Meta License") in 2025. The negotiations broke down over disagreement over the fee that Defendant would pay to Plaintiff, and the Wixen-Meta License expired on December 10, 2025. After the negotiations broke down, but before the Wixen-Meta License expired, Defendant unilaterally chose to remove some of Plaintiff's current and former clients' music from the Music Library. Defendant then

told Plaintiff's current and former clients that the music was removed by, or caused to be removed by, Plaintiff. Since the expiration of the Wixen-Meta License, Plaintiff alleges that Defendant has, without authorization or compensation, reproduced and made the Works available to its Apps users via Reels and the Music Library, resulting in thousands of audiovisual works incorporating, without authorization or compensation, the Works.

### B. Procedural Background

On January 23, 2026, Plaintiff filed its Complaint with this Court alleging copyright infringement under 17 U.S.C. § 101, *et seq*., defamation, trade libel, and intentional interference with contractual relations against Defendant. (Dkt. 1.) In its Complaint, Plaintiff identified three hundred and thirty-one (331) Works being infringed by Defendant. *Id.* On May 15, 2026, Plaintiff filed the FAC, adding additional Works, increasing the number of Works to six hundred and eighty-one (681), and adding additional facts regarding its claims for defamation, trade libel, and intentional interference with contractual relations. (Dkt. 27.) On September 18, 2026, Plaintiff filed the SAC (Dkt. 45), removing one hundred twelve (112) Works for a total of five hundred and sixty-nine (569).

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). Motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) are disfavored, and, accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (internal citations omitted). *See also Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Atelier Fashion Co. v. Amiri & Assocs.*, No. CV 18-2308 PA (GJSX), 2018 WL 5858592, at *2 (C.D. Cal. May 15, 2018) ("The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6).").

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The pleading standard under Rule 8 requires "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, the court must accept as true the allegations of the complaint and draw reasonable inferences in plaintiff's favor. *Id.* at 555. Inquiry into the adequacy of the evidence is improper. *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). Pleadings should not be found deficient even if it is apparent "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *Moss v. US Secret Service*, 572 F.3d 962, 968 (9th Cir. 2009).

## III. DISCUSSION

### A. The Copyright Act of 1976 Applies in Analyzing Standing

It is well established that the Copyright Act of 1976 is the operative law as of January 1, 1978, abrogating the 1909 Act. *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1225 (9th Cir. 1998) ("the Copyright Act of 1909, 17 U.S.C. § 1 et seq. (repealed effective 1978)"). The specific issue here is whether the transfer of rights from Plaintiff's clients to Plaintiff is sufficient to grant standing. And there, the Ninth Circuit looks to the law applicable at the time of the transfer to evaluate the rights transferred, including whether standing was conveyed. *See, e.g.*, *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428–29 (9th Cir. 1996).

The 1909 Act treated copyright interests as indivisible, limiting what a copyright owner could transfer, but the 1976 Act does not. *Nafal v. Carter*, 540 F. Supp. 2d 1128, 1136 (C.D. Cal. 2007), *aff'd,* 388 F. App'x 721 (9th Cir. 2010) (quoting *Gardner v. Nike, Inc.*, 279 F.3d 774, 779 (9th Cir. 2002)). *Gardner* is instructive and controlling here: The Ninth Circuit analyzed a 1992 licensing agreement under the 1976 Act, in each instance applying the provisions of the 1976 Act. *Gardner*, 279 F.3d at 774. More specifically, the Ninth Circuit held that 17 U.S.C. § 201(d)(1)

governed the 1992 license. *Gardner*, 279 F.3d at 779 ("[T]he crux of this case is the appropriate interpretation of 17 U.S.C. § 201.")

Although this Court took the opposite approach in *Triller* and *Nafal*, 540 F. Supp. 2d at 1135, those are not controlling here. *Triller* never reached the Ninth Circuit. And in affirming *Nafal* on other grounds, the Ninth Circuit notably stated that it was "assuming without deciding that the *Copyright Act of 1976* governs standing in this case[.]" *Nafal v. Carter*, 388 F. App'x 721, 723 (9th Cir. 2010) (emphasis added). *Dolman* and *Gardner* remain controlling precedent in the Ninth Circuit. Therefore, the date of the agreement in which copyrights were transferred determines which Copyright Act is used to analyze standing. It follows that an agreement entered into on or after January 1, 1978, is analyzed under 17 U.S.C. § 201(d)(1). Defendant's position that a law that was repealed before 1978 – the 1909 Act – would apply on or after January 1, 1978, is incorrect.

The SAC alleges that all of its rights as an exclusive licensee to the Works arise from agreements entered into after January 1, 1978. (SAC ¶ 15.) Therefore, Plaintiff's standing is analyzed under 17 U.S.C. § 201(d)(1), which, unlike the 1909 Act, does not limit a licensor's right to transfer standing.

For these reasons, Defendant's Motion to dismiss Plaintiff's claims for direct copyright infringement and contributory copyright infringement based on lack of standing is denied.

**B. Direct Copyright Infringement**

To state a claim for direct copyright infringement a plaintiff must plausibly allege (1) ownership of the work; (2) violation of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106; and (3) volitional conduct by the defendant. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 667 (9th Cir. 2017).

According to the SAC, Plaintiff is the exclusive licensee and/or owner of the Works and holds exclusive rights in them. (SAC ¶¶ 5, 13, 60, 61, 71, 72). The SAC alleges that Defendant violated Plaintiff's exclusive rights to public display and public

performance of the Works, among other rights, by making the Works available on a centralized Music Library, which it controls and makes accessible to users across its Apps for selection of music for a Reel or WhatsApp Status. (SAC ¶¶ 19, 20.) The SAC also identifies a common post-termination period of the Works, beginning when the Wixen-Meta License ended on December 10, 2025, during which Defendant continued and continues to make the Works available through the Music Library. (SAC ¶¶ 3-4, 21, 24-25.) Plaintiff's allegations are supported by screenshots depicting the Works appearing in the Music Library's search results (and audible to the Apps' users) after the Wixen-Meta License had terminated. (SAC ¶ 24, Ex. 2.)

Plaintiff need not file an excessively voluminous complaint stating a claim as to each and every one of the 569 Works identified in the SAC. A plaintiff may submit a representative sampling of infringement where the plaintiff is alleging infringement across many works. *See Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015). The FAC properly alleges that Defendant, through its own volition, made the Works available across its platforms on the Music Library. (SAC ¶¶ 3-4, 21, 24-25) Defendant acknowledges that it maintains the Music Library. (Motion 3:21-22.) Thus, the SAC sufficiently alleges that the availability of the Works in the Music Library post termination was independent of any user action.

For these reasons, Defendant's Motion to dismiss Plaintiff's claim for direct copyright infringement is denied.

**C. Contributory Copyright Infringement**

A defendant is liable for contributory infringement where it, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct *of another*[.]" *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971)). The Supreme Court distinguishes between two types of contributory infringement for service providers: "First, it can show that a party affirmatively

induced the infringement. Or, second, it can show that the party sold a service tailored to infringement." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 588 (2026).

Plaintiff does not contend that the Music Library is per se illegal nor that it is a service tailored to infringement. Instead, Plaintiff contends that Defendant induced infringement of the Works.

As pleaded in the SAC, the Works, including the song "Mr. Roboto," were available in the Music Library after the Wixen-Meta License terminated. (SAC ¶¶ 24-25, Ex. 2.) The purpose of the Music Library is for users to incorporate music into videos. (Motion 3:21-22.) The screenshot depicting the availability of "Mr. Roboto" in the Music Library after the Wixen-Meta License terminated shows at least nine user videos incorporating "Mr. Roboto" and reflects that at least 300 Reels had been created by users incorporating that Work. (SAC ¶ 25.) Those Reels are third-party reproductions (*i.e.*, created by users) of the Works and the SAC alleges that Defendant materially contributed to those Reels by supplying the Works through its unified Music Library. As pleaded in the SAC, Defendant knew or had reason to know the Wixen-Meta License terminated on December 10, 2025, and therefore knew any continued availability of the Works was not authorized.

For these reasons, Defendant's Motion to dismiss Plaintiff's claim for contributory copyright infringement is denied.

**D. <u>Defamation</u>**

When considering a claim for defamation at the pleading stage, a court decides only whether a statement is capable of a defamatory meaning. How the statement was actually understood is a question for the factfinder. *Smith v. Maldonado*, 72 Cal. App. 4th 637, 647 (1999). Where the statement can bear both a defamatory and innocent meaning, it is for a jury to decide. *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (1991).

**1. Defamatory Meaning**

Defendant's statements, as pleaded in the SAC, are capable of a defamatory meaning. The SAC alleges that months before the Wixen-Meta License terminated, Defendant unilaterally removed music licensed under the Wixen-Meta License from its Music Library. (SAC ¶¶ 34-35.) Defendant told Plaintiff's client that their music was removed because of Plaintiff. (SAC ¶ 35.) Defendant knew that statement was false because the music was still licensed under the Wixen-Meta License. (SAC ¶¶ 34-35.) Additionally, Defendant told Plaintiff's former clients that their catalogs were unavailable on Defendant's platforms due to active ownership claims by Plaintiff. (SAC ¶ 37, 47.) Defendant knew these statements were false because Plaintiff had not administered the catalogs for years and had no pending ownership claims with Plaintiff. *Id*.

Defendant concedes that the recipients include established music industry participants and professionals. (Motion 15:8-11.) This makes the defamatory significance of Defendant's alleged statements more discernible. Defendant made statements to individuals who would immediately understand those statements to impugn Plaintiff's professional integrity and competence. That Defendant can articulate a purported non-defamatory reading does not entitle Defendant to dismissal. *See Smith,* 72 Cal. App. 4th at 647.

**2. Falsity**

The SAC plausibly alleges the falsity of the statements at issue. Defendant removed music licensed under the Wixen-Meta License prior to its termination ( SAC¶ 34.) Then, while the Wixen-Meta License was still in place, Defendant told Plaintiff's clients and their representatives that Defendant removed their music because Defendant was unable to renew its agreement with Plaintiff. (SAC ¶ 35.) Thus, the removal of Plaintiff's client's music could not have been because the parties were unable to renew their license agreement.

As set forth in the SAC, after the Wixen-Meta License terminated, Defendant removed music of one of Plaintiff's former client and blamed Plaintiff for the removal. (SAC ¶ 47.) However, the music was not being licensed by Plaintiff, but by another publisher. *Id*. Plaintiff never initiated such a takedown of their former client's music because it was no longer their publisher, and a cursory review of Defendant's internal records would have shown that Plaintiff had not claimed that former client's music for several years. *Id*. Nonetheless, Defendant told the former client's publisher that the music was removed due to "active ownership claims" by Plaintiff. *Id*. Plaintiff alleges that Defendant made similar, false claims to representatives of other former clients of Plaintiff's and third parties whom Plaintiff has *never* represented. *Id*.

The SAC alleges that Defendant also made statements to other publishers that strongly indicated that Plaintiff did not properly relinquish its rights to a former client's music during the change in ownership process. (SAC ¶ 42.) A representative of Plaintiff's former client contacted Defendant to inquire about the status of its music after changing from Plaintiff to a new publisher. *Id*. In response, Defendant instructed the representative to "resolve" its issues with Plaintiff directly, strongly implying that Plaintiff had not properly relinquished its rights. *Id*. As alleged in the FAC, Plaintiff relinquished its rights to the former client's music in accordance with Defendant's relinquishment process. (SAC ¶¶ 41-42.) Therefore, the suggestion that Plaintiff did not relinquish it was false. (SAC ¶ 43.)

For these reasons, Defendant's Motion to dismiss Plaintiff's claim for defamation is denied.

**E. Trade Libel**

Trade libel is the publication of a false statement that disparages the quality of a plaintiff's product or services and causes pecuniary loss. *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001). Disparagement does not need to be explicit; it is sufficient that the statement clearly asserts or implies the inferiority of

plaintiff's services. *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 297–98 (2014).

According to the FAC, while the Wixen-Meta License was still active, Defendant removed Plaintiff's clients' music from the Music Library. (SAC ¶ 39, 41.) Defendant then told Plaintiff's clients that Plaintiff needed to take specific action to have the music reinstated and/or that Plaintiff caused the music to be removed. *Id*. However, the decision to remove Plaintiff's clients' music was unilaterally made by Defendant while an active license from Plaintiff was in place. *Id*. Defendant's statements implied that Plaintiff's services were inferior (*i.e.*, that Plaintiff had failed at publishing administration of its clients' music, the very thing Plaintiff was hired for) and could and did cast doubt on the quality of Plaintiff's services. *Id*.

**1. Special Damages**

Special damages must be pleaded by identifying particular customers and transactions lost as a result of the disparagement, rather than relying on a general decline in business. *Erlich v. Etner*, 224 Cal. App. 2d 69, 73–74 (Ct. App. 1964); *but see Swiss Am. Trading Corp. v. Regal Assets, LLC*, No. CV 14-04960 DDP ASX, 2015 WL 631569, at *3 (C.D. Cal. Feb. 13, 2015) (Plaintiff's allegations that it "lost market share" and "suffered continuing irreparable harm to reputation and goodwill" was sufficient to plead special damages). A "plaintiff is not required to allege a specific dollar amount" of pecuniary loss. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998). This is because Rule 9 does not require "that the plaintiff plead the amount as well as the type of any special damage claim," rather, "the rule is designed to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint." *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962).

The SAC leaves no surprises about the nature of Plaintiff's damages for its trade libel claim. The SAC identifies two specific clients – Former Client 2 and

Former Client 3 – whose agreements with Plaintiff terminated early as a result of Defendant's statements. (SAC ¶¶ 39,41.) Plaintiff identified the date of Defendant's statements and the substance of each statement. *Id*. Further, Plaintiff detailed the terms of each terminated agreement, specifying that Plaintiff was entitled to a percentage of royalties collected, and the early termination of those agreements deprived Plaintiff of the royalty share it would have otherwise received over the remaining term of each agreement. *Id*. In sum, Plaintiff does more than allege a general loss of business and has sufficiently informed Defendant and the Court of the substance of its damages.

For these reasons, Defendant's Motion to dismiss Plaintiff's claim for trade libel is denied.

**F. Interference with Contractual Relations**

Pleading a claim for tortious interference with contractual relations requires the plaintiff to: (1) state which third parties, if any, plaintiff had a contract with; (2) suggest how or why defendant would have a basis for knowing of such contract; (3) indicate, beyond conclusory allegations, facts making it plausible that the defendant intended to disrupt the relationship with third parties; (4) allege how the plaintiff's business was interfered with; and (5) provide facts describing the plaintiff's damages. *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 960 (S.D. Cal. 2021).

The basis of Plaintiff's claim against Defendant for intentional interference with contractual relations arises from its relationships with Former Client 2 and Former Client 3, which are pleaded as representative examples of agreements with which Defendant interfered. (SAC ¶¶ 35-36, 39, 41.) Both Former Client 2 and Former Client 3 were parties to publishing administration agreements with Plaintiff. *Id*. Under the agreements, Plaintiff had "the exclusive right to sign agreements, collect royalties, receive monies, issue synchronization and other licenses, pay royalties, register copyrights, and otherwise interact and assert rights on behalf of each copyright owner with or against musical service companies such as [Defendant]."

(SAC ¶ 5.) In exchange for administering each client's catalog, Plaintiff retained a percentage of royalties collected. (SAC ¶¶ 39, 41.)

Plaintiff's SAC alleges that Defendant made statements to Former Client 2 and Former Client 3 after Defendant removed their music from the Music Library. (SAC ¶¶ 39-42.) These statements included advising Former Client 2 that Plaintiff "simply needs to upload some forms" in order for the music to be reinstated. (SAC ¶ 39.) Defendant made similar statements to Former Client 3 after Former Client 3 made an inquiry regarding the status of their music on Defendant's platforms. (SAC ¶ 42.) The statements indicate that Defendant was aware that Plaintiff was Former Client 2's and Former Client 3's publisher and there was, necessarily, an agreement between them. As a sophisticated music-industry participant, Defendant knew or should have known that Plaintiff, as their publisher, had a contractual relationship with Former Client 2 and Former Client 3.

The SAC also sufficiently alleges that, at the very minimum, Defendant knew that its statements would negatively impact Plaintiff's relationship with its clients. Defendant's statements were made soon after the parties' renegotiation of the Wixen-Meta License broke down because Plaintiff rejected the rates offered by Defendant. (SAC ¶¶ 29-36.) This timing plausibly indicates that Defendant made the statements to strong-arm Plaintiff into accepting Defendant's rates. (SAC ¶ 36.) Further, Defendant unilaterally removed the music while the Wixen-Meta License was still operative, and Plaintiff had not initiated any takedown of the music. (SAC ¶¶ 39-42.) Defendant knew or should have known that telling Plaintiff's clients that the removal was Plaintiff's fault would interfere with Plaintiff's contracts with its clients to administer their music. *See Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56, 960 P.2d 513, 531 (1998), as modified (Sept. 23, 1998) ("[I]t applies also to intentional interference…in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an

interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.”).

Defendant’s statements caused Former Client 2 and Former Client 3 to believe that Plaintiff willingly refused to engage in routine elements of publishing administration, and that this purported refusal by Plaintiff caused its music to be blocked from Defendant’s platforms. (SAC ¶ 40-42.) This resulted in the breakdown of Plaintiff’s relationship with its clients, termination of Plaintiff’s contracts with its clients, and loss of revenue to Plaintiff because it lost royalties provided for under the contracts. (SAC ¶¶ 39-42, 49.)

For these reasons, Defendant’s Motion to dismiss Plaintiff’s claim for intentional interference with contractual relations is denied.

## IV. CONCLUSION

Defendant’s Motion is **DENIED** .

Dated: ______________________________

______________________________
Hon. John F. Walter
Judge, United States District Court